[No. 8157]

UNION TRADING COMPANY ET AL. V. DRACH ET AL.

1. EVIDENCE—*Competency.* Replevin for a warehouse and certain machines and machinery. The plaintiffs claimed under a sale of certain properties of a bankrupt corporation, made pursuant to an order of the referee in bankruptcy. The order recited that the stockholders had prayed that the real estate should not be sold, "which request was granted." *Held* the fact that the corporation carried the warehouse on its books as real estate, was competent to show what the stockholders had in mind in petitioning for the exclusion of the real property from the order of sale. (554)

2. ——*Effect.* Replevin for a warehouse, plaintiff claiming under a sale of the properties of a bankrupt corporation, made pursuant to the order of the referee in bankruptcy. The only words of description in the order which could be construed to include the property in question were "fixtures and equipment." The referee in bankruptcy, previous to the sale, caused an appraisement to be made of the warehouse and equipment, and other items, of much less value. Subsequent to the sale the referee ordered a second appraisement of the identical properties in controversy. These circumstances

were accepted as tending to prove the absence of intention on the part of the referee, or the court in bankruptcy, to include in the sale the warehouse and equipment.   (555, 558)

That subsequent to the sale the purchaser negotiated with the trustee in bankruptcy for the rental of the warehouse, stating what, in his opinion, would be a fair rental, and making no claim that it was included in the purchase, was accepted as negativing the claim of plaintiffs.   (556, 557)

3.  JUDICIAL SALE—*Defined.*  Is one made under the process of a court having authority to order it.   The court is the vendor, and the officer conducting the sale is the mere agent of the court.   (558)

4.  ——*Caveat Emptor,* applies to judicial sales.   (558)

5.  ——*General Description* of the property sold, when followed by a more particular enumeration, the latter governs.   (559)

*Error to Garfield District Court.*—Hon. JOHN T. SCHUMATE, Judge.

Messrs. BURGESS & KINARD, and Mr. STRAUD M. LOGAN, for plaintiffs in error.

Mr. JAMES C. GENTRY, and Mr. J. W. DOLLISON, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an action in replevin.  The property involved is described as follows:

"One warehouse 40x100 feet in size, two stories in height and basement, said warehouse being of the value of Twenty-five Hundred Dollars, and one motor and grain separator, the same being in said warehouse, and of the value of Three Hundred Fifty Dollars; one grain elevator, the same being in said warehouse, and of the value of Ninety Dollars; one pair of Wagon Scales of the value of Seventy-five Dollars; one pair of Platform Scales of the value of Twenty-five Dollars; three two-wheeled trucks of the value of Fifteen Dollars; one pair

of four-wheeled trucks of the value of Fifteen Dollars; two sack holders of the value of Two Dollars, and two patent crowbars of the value of Three Dollars all of the aggregate value of Thirty-one Hundred and Fifty ($3150.00) Dollars, and that said personal property was and is on the following described land, in Garfield county, Colorado, to-wit:

Commencing at a point 64 feet at right angles northerly from the center line of the main track of the Denver & Rio Grande Railroad Company, at Rifle Station, and opposite a point on the said center line of 300 feet westerly along said track from the westerly end-line of the depot building, at said station, thence westerly parallel with and 8 feet northerly from the center line of said railroad company's house track 200 feet, thence at right angles northerly 100 feet, thence at right angles easterly 200 feet, thence at right angles southerly 100 feet, to the place of beginning.''

The trial court rendered judgment in favor of plaintiff below, defendants in error here.

Prior to the 12th day of December, 1911, the Union Trading Company, defendant below, was the exclusive owner and in possession of this, among other property. The said corporation was then engaged in the general merchandise business, among other enterprises, at several points within the state, including the town of Rifle, where the property in dispute was situated. On the latter date the corporation was declared a bankrupt, and one W. C. Weaver was appointed receiver, and later during said month of December, 1911, was appointed trustee in bankruptcy.

On the 27th day of January, 1912, S. D. Trimble referee in bankruptcy, ordered a public sale of certain of the property of the trading company, by the trustee, and which sale was held on the 17th day of February, 1912, at the Federal Court building in Pueblo. The de-

fendants in error purchased certain of the property of the trading company, located at the town of Rifle, and at other points, and claim title to the property in con troversy, as being included within such sale.  The property of the trading company was advertised and sold at such sale, as consisting of fourteen different lots. The claim of Drach & Co. plaintiff below, to title is based on the sale of Lot No. 1, described as follows:

"Lot No. 1, Parcel A.   Merchandise at Rifle,

| | | | |
|---|---|---|---|
| Colorado, Inventoried valuation | | | $25,035.87 |
| Parcel B. | Fixtures and equipment | | 799.80 |
| " | C. | Bills receivable, appraised | 2,471.97 |
| " | D. | Open accounts, appraised | 1,131.66 |
| " | E. | 500 shares of the capital stock of the Rifle Ice & Storage Co., par value | 25.00 |
| " | F. | 25 shares Rifle Light, Heat & Power Co., par value | 25.00 |
| " | G. | 60 shares Rifle Creek Te. Co., par value | 60.00 |
| " | H. | 1000 shares Rifle Creek Mercantile Co., par value | 1,000.00 |
| " | K. | All cash and cash items to date of sale." | |

This property so described as Lot No. 1, was purchased by Drach & Company at the sale and in the lump for $12,000.00.   Under the order of sale the Trustee in Bankruptcy was authorized:

"To advertise and offer for sale, and to sell, subject to confirmation by order of this court, certain of the property of said bankrupt corporation hereinafter described, at public sale, at auction, to the highest and best bidder for cash, and that he keep an accurate account of the amount offered for each lot or parcel offered, and the price offered for each parcel and for each lot, and by whom offered; and that, after offering each parcel separately, he shall offer all of the parcels comprising one lot, together, and so continue offering each

parcel of each lot and each lot separately until he has received bids upon and for all of the personal property of the company pertaining to each store, or place of business, and shall report to this court the bids received by him and ask confirmation by order of this court of the sales; that for the purpose of such sales the property of the said bankrupt corporation shall be divided into lots and parcels as follows:''

The order then specifically described the fourteen lots, including Lot No. 1, sold to Drach & Company, and exactly as above set forth.

The advertisement of sale recites that the trustee will ''offer and expose for sale to the highest and best bidder for cash the following described of the appraised property of The Union Trading Company as follows, to-wit.'' Then follows the description of the property to be sold, as in the order of sale. The order of confirmation recites that the trustee did offer and expose for sale at public vendue:

''Each and every parcel of each and every lot as advertised. * * * That after offering each parcel of each lot and each lot separately, and after re-offering same to the bidders present, this Trustee accepted as the highest and best bids or offers for each of said lots, the following: Lot No. 1, Rifle, E. E. Drach, $12,000.''

In the order of sale, it is recited that the stockholders in the petition for an order of sale had requested that the real estate of the company and certain bills receivable, be not sold for the present, and that such request had been acquiesced in by the creditors, and was granted.

The defendant below offered to show that the trading company had carried the warehouse on its books as real estate, which offer was denied by the court. If this property was so carried on the books of the company, it is a circumstance to show what was in the minds of

the stockholders when they asked the court not to in-
clude the real estate in the order of sale.

There does not appear to be any fact in the record
tending to show that the property involved, or any part
thereof was intended by the petitioners, or the court, to
be included in the sale. Clearly, no part thereof was
mentioned, nor included in the specific lists of property,
either in the order, or in the published advertisement of
sale. The trial court found as a fact that ''the ware-
house and other property mentioned above is not par-
ticularly mentioned either by name or by amount of ap-
praisement in said order of sale, unless such amount was
embraced in Parcel 'A' of Lot '1'.'' That the warehouse
was not included under the head of merchandise when
the fixtures and equipment of the store were appraised
and described separately from the merchandise, is too
plain to admit of contention.

The only testimony upon which the defendants un-
dertake to rest their claim is that the purchasers be-
lieved that the property was included in the sale. As
against this is the fact that Mr. Drach says that before
the purchase he had knowledge of the descriptions in the
order and advertisement.

In addition to this the record contains the follow-
ing undisputed state of facts. Mr. Weaver, the trus-
tee, testified:

''Q. I will ask you whether after the sale or on the
date of the sale and after the sale you had any conversa-
tion with Mr. Drach with reference to the leasing of the
property in controversy? A. Yes, sir.

Q. State where, in what place and at what time you
had a conversation with Mr. Drach relative to the leas-
ing of the property in controversy? A. At my office
in the Opera House block after the sale. All of the
buyers were present there getting their orders for de-
livery and Mr. Drach was among them, and I believe

was leaving that night and the question of rents was spoken of and I told him I would consult with Judge Trimble and let him know later, which I did, wrote him on Monday in regard to the rents.

Q. Did you in following up this conversation write a letter to him regarding the rents? A. Yes, sir.

Q. I hand you defendants' exhibit 2 and ask if that is the letter that you refer to? A. That is the one.''

The letter referred to was dated February 19th, 1912, and contained the following:

''In regard to the rents, would suggest that in our opinion $1200 for the Meeker; $600 *for the Rifle warehouse,* and $300 for the Rulison store would be about correct.''

It will be noted that the Drach firm purchased the three stocks of goods at Meeker, Rulison and Rifle, and that the rent mentioned was for property at Meeker and Rulison and the warehouse at Rifle, the rent for such warehouse being specifically stated to be $600 per annum. Further, that the total of these rents proposed was $2100 per annum or $175 per month.

Again, on March 20th, 1912, Mr. Weaver again wrote Mr. Drach concerning these rents as follows:

''There will be a meeting tomorrow to decide the entire future of the Trading Company, and as we have charged you with the rents as per former letter, $175 for the month, we will await result of said meeting before making final settlement, and will then advise you as to who you will have to deal with in regard to leases.''

In reply to these letters Mr. Drach wrote Mr. Weaver on March 23rd, as follows:

''I note your observations as to rentals, and beg to state that in our opinion the amount of $175 is entirely too much, but presume this matter can be easily adjusted between us at the proper time.''

Mr. Drach made no claim of ownership of the ware-

house at that time, though the letters of the trustee to which he then replied, both claimed rent for the warehouse at the rate of $600 per annum.

As further throwing light on the intention of the court, it appears that on the 18th day of December, 1911, the Referee in Bankruptcy ordered an appraisal of the property at Rifle and the appraisers filed their report on the 26th day of December, 1911, appraising such property as follows:

"Warehouse and Equipment on Railroad
   Right of Way.........,.............$ 3,750.00
Notes as per list attached...............   2,471.97
Accounts per list attached...............   1,131.66 `
Merchandise per list attached............ 18,505.82
Equipment in Store, per list attached......  · 799.80"

It will be seen that the property here involved was then separately appraised as: "Warehouse and Equipment on Railroad Right of Way, $3750.00."

Clearly, the court could not have intended to include property of such value and description without some appropriate mention in the order of sale, wherein he specifically set forth items of much less moment.

Again and after the sale to Drach & Company, the Referee in Bankruptcy, on the 6th day of March, 1912, ordered an appraisal of the specific property involved, and the report of the appraisers made on the 11th day of March, 1912, shows the value of the particular property to be $2250.00.

If the court had intended to, and did sell the specific property to Drach & Company, on the 17th day of February, 1912, why did he order an appraisement of such property, on the 6th day of March following.

There was no appraisement of the property conceded to have been included in the sale at that time. Why should he order an appraisement of property theretofore sold and delivered, and for which payment had been

made. Nothing is plainer than that the court did not intend to sell the property involved to Drach & Company. So that in the most favorable light for the defendants in error, the facts are that the order of the sale and the advertisement of sale specifically described the property to be sold, and that none of the property involved in this case was included within such description; that it was not intended to sell all of the property of the Union Trading Company.

There is no evidence tending to show that the stockholders, creditors or the court intended to sell the property involved, though the defendants in error say they believed that such property was included. There is however, nothing in the record which seems to furnish a reasonable basis for such belief. What then are the rights of the parties under such state of facts.

It is conceded that the sale was in law a judicial sale.

"A judicial sale is one made under the process of a court having competent authority to order it, by an officer legally appointed and commissioned to sell; one made by a court of competent jurisdiction, in a pending cause through its authorized agent. A sale under an order or decree of court is a judicial act. The court is the vendor, and the officer conducting the sale is the mere agent of the court. The sale is a transaction between the court and the purchaser." 24 Cyc. 6.

In the sale under consideration there is no suggestion of fraud nor mutual mistake, and the maxim *caveat emptor* applies strictly to judicial sales. *Redd v. Dyer et al.* 83 Va. 331 2 L. E. 283, 5 Am. St. 272; *Long v. Wellers Executor*, 29 Gratt, 347.

The order of the court and the advertisement, included only "certain of the property of the bankrupt hereinafter described," followed by the specific description, which clearly did not include any of the property involved in this action.

It may be said to be the universal rule that where property sold is described generally, followed by a more particularly enumerated schedule, the latter governs.

This doctrine is announced and the question exhaustively discussed by Mr. Justice Harlan in *Bock v. Perkins,* 139 U. S. 628, 35 L. Ed. 314, 11 Sup. Ct. 677. No authority has been cited to the contrary and we know of none. Under these well settled rules of the law as applied to the facts in this case, the judgment must be and is reversed.

GARRIGUES, J. and TELLER, J. concur.