### RIVERSIDE MILLS v. ATLANTIC COAST LINE R. CO.

(Circuit Court, S. D. Georgia, N. E. D. April 2, 1909.)

CARRIERS (§ 23*)—CONSTITUTIONAL LAW (§ 248*)—INTERSTATE COMMERCE—LOSS OF GOODS—ACTION AGAINST INITIAL CARRIER—HEPBURN ACT—ATTORNEY'S FEES.

    Act Feb. 4, 1887, c. 104, § 8, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3159), allowing against an offending initial carrier, to a shipper, reasonable attorney's fees in an action for loss of goods, shipped in interstate trade, constitutes a valid regulation of interstate commerce.

    [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 23;* Constitutional Law, Cent. Dig. § 703; Dec. Dig. § 248.*]

Action for Damages under "Hepburn Act." Claim of attorney's fees under section 8 of the act.

R. J. Southall and Alexander Akerman, for plaintiff.
Joseph R. Lamar, for defendant.

SPEER, District Judge. The question before the court is briefly this: Where connecting lines of railways, engaged in interstate commerce, shall fail properly to transport property which they have received and for the transportation of which they have been paid, and also fail and refuse for an unreasonable time to pay the shipper the loss thus sustained, is the court authorized by the provisions of the act of Congress approved June 29, 1906, known as the "Hepburn Act"

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(34 Stat. 584, c. 3591 [U. S. Comp. St. Supp. 1907, p. 892]), to allow in its judgment reasonable attorney's fees to the shipper and against the offending companies?

The precise question in issue has not been determined by a court of paramount authority. In the case now under consideration the constitutionality of the entire act has been vigorously assailed, but the validity of the act and the liability of the defendant company have been sustained. A decree, directing a recovery of some $300 for its goods shipped in interstate trade over the defendant's connecting lines, has been entered. The liability of the defendant company for the reasonable fee of the plaintiff's attorneys remains to be determined. The construction necessary for decision involves the following clauses of the act:

Section 20 (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169], as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1907, p. 909]) provides:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

Section 8 of the act is as follows:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done, any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

In the proper interpretation of these clauses we may utilize the familiar rule, and search for the old law, the mischief, and then for the remedy which Congress has attempted to provide. The liability of the common carrier (and this is not restricted to railroads) for the failure to deliver or pay for goods intrusted to it for transportation for hire was fixed by the common law. That law, however, was not sufficient to redress the wrongs of shippers sustained on modern lines conveying interstate commerce. The loss of the commodities belonging to "David Copperfield" and "Peggotty," carried by "Mr. Barkis" from Blunderstone to Yarmouth in his wagon, or "the red bag, the striped bag, brown paper parcel, and the leather hat box," transported by the elder "Weller" for "Mr. Peter Magnus" in the boot of the former gentleman's coach from the "Blue Inn," Whitechapel, to the "Great White Horse Inn," at Ipswich, might, perhaps have been readily recoverable. It is quite different, however, we may say, with regard to a shipment of cotton goods from the Riverside Mills in Au-

gusta to Seattle or San Francisco over the many connecting railways spanning the continent. The countless losses of such shipments, and their important values, became an incalculable injury to the shippers and a burden upon their business. The failure to speedily adjust such losses became the chief contributing cause of this injury to the shipper. Official reserve and official indifference, amounting at times to that "insolence of office," the chiefest of those "spurns which patient merit of the unworthy takes," often greeted the efforts of business men and others to obtain redress. Every shipper of consequence, every practicing attorney holding claims arising from such delinquencies, every judge trying such claims, can readily recall the circumlocution, and the consequent insufferable delay in the adjustment of liability of the plainest character. Each claim, it seems, must be apparently scrutinized often by more than one department of each successive railroad extending from the point of delivery to the point of destination. It did not matter how many such railroads there might have been, how great the distance, how long the time consumed, how unreasonable the delay, how injurious the loss. Each employé with relating duties must at his leisure contemplate the claim in every light of which it was capable, write the result of his discoveries thereon, and forward it to the agent of the connecting line, or to all of the agents of each of the connecting lines. In the meantime the shipper was suffering the accumulating injury resulting from the loss of his goods, the interruption of his business, the deprivation of interest on the sum involved, and possibly the loss of other business from the disappointed and exasperated customer, attending the slow return of the now bulky file. At length, after the obviously just demand had been leisurely scrutinized by all the "Tite Barnacles" of this unprecedented circumlocution, the shipper had usually to content himself with a curt refusal to pay anything. Happily for him, however, Congress has opened the national courts for his claim, no matter how small the amount, and, in order to impart some degree of celerity to the mental or meditative activities of the "Tite Barnacles" aforesaid, the penalty of reasonable attorney's fees, to be fixed by the court, is also granted by the law.

In the absence of such a penalty, the small shipper, notwithstanding the wise purposes of the national legislation, would have been helpless. Take a case like that before the court, which has been fought at every step here, and which we are now advised by the bill of exceptions presented will be carried to the Supreme Court of the United States in order to test the authority of Congress to enact such legislation. The amount involved is only $300, and the Riverside Mills, although a prosperous factory, had ordinarily better suffer the loss rather than pay even the moderate amount of fees for attorneys or counsel proper in such a case. If, however, the railways, whose negligence under the agreed state of facts occasioned the loss and refused adjustment, must pay the attorney's fees, not only can the plaintiff safely and inexpensively press his remedies for righteous redress, but the result of litigation will have the most salutary effect on the officials of those corporations, who for hire transport in interstate commerce the products of the people. While this provision of the law may, there-

fore, encourage shippers to institute litigation, it will in a short time have the effect of preventing that negligence which renders such litigation possible.

The principle of the statute has been fully upheld by the Supreme Court of the United States in Seaboard Air Line Railway v. Seegers, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108. There the state of South Carolina had attached a penalty of $50 to each failure of a railroad company engaged in intrastate commerce to pay a claim for loss or damage within 40 days after the filing of the same, and where there was a recovery of the full amount claimed. The goods shipped in that case were a bunch of bananas, and the freight charges were only $1.75, whereas the penalty sued for was $50. This difference, says Mr. Justice Brewer, "naturally excites attention." But the learned justice added:

"We are of the opinion that this case comes within the limits of constitutionality. * * * The object of the statute was not to penalize the carrier for merely refusing to pay a claim within the time required, whether just or unjust; but the design was to bring about a reasonably prompt settlement of all proper claims, the penalty, in case of a recovery in a court, operating as a deterrent of the carrier in refusing to settle just claims, and as compensation of the claimant for the trouble and expense of the suit which the carrier's unreasonable delay and refusal made necessary."

The learned justice further points out the fact that:

"The matter to be adjusted is peculiarly within the knowledge of the carrier. It receives the goods and has them in its custody until the carriage is completed."

On the other hand, we may add that the shipper does not know what has become of his goods, and the consignee is equally uninformed.

"It may be stated as a general rule," said Justice Brewer, "that an act which puts in one class all engaged in business of a special and public character, requires of them the performance of a duty which they can do better and more quickly than others, and imposes a not exorbitant penalty for a failure to perform that duty within a reasonable time, cannot be adjudged unconstitutional as a purely arbitrary classification."

Holding that "the purpose of the legislation" was primarily "to compel the performance of duties which the carrier assumes when it enters upon the discharge of its public functions," the Supreme Court of the United States sustained the validity of the South Carolina legislation upon this subject.

Now, what a state may do within the regulation of intrastate traffic, Congress may do in the regulation of that which is interstate. For the reason, then, that the mischief sought to be avoided was the unreasonable delay and the arbitrary refusal to pay just claims, we must conclude that Congress, when it authorized, in the case of a recovery under this great act to further regulate the vital business of transportation in interstate commerce, the taxation by the court of a reasonable attorney's fee as a part of the costs of litigation, was clearly within its authority.

For these reasons, the court will allow a fee of $100 for the plaintiff's attorneys.