## ALABAMA GREAT SOUTHERN RY. CO. et al. v. AMERICAN COTTON OIL CO.

(Circuit Court of Appeals, Fifth Circuit.   January 10, 1916.   Rehearing Denied, February 1, 1916.)

### No. 2786.

1. REMOVAL OF CAUSES ⬦19—CAUSES REMOVABLE—ACTIONS ARISING UNDER UNITED STATES CONSTITUTION AND LAWS.

Judicial Code (Act March 3, 1911, c. 231) § 24, subd. 1, 36 Stat. 1091 (Comp. St. 1913, § 991) gives United States District Courts original jurisdiction of suits arising under the Constitution or laws of the United States where the matter in controversy exceeds the sum or value of $3,000, and subdivision 8 gives them jurisdiction of all suits and proceedings arising under any law regulating commerce, except those jurisdiction of which is conferred upon the Commerce Court.   Section 28 provides that any suit of a civil nature arising under the Constitution or laws of the United States, of which the District Courts are given original jurisdiction and which may be brought in any state court may be removed to the proper District Court.   The Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [Comp. St. 1913, § 8592]) to Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, pars. 11, 12, 24 Stat. 386, requires common carriers receiving property for interstate transportation to issue a receipt or bill of lading, and provides that such carrier shall be liable to the lawful holder thereof for any loss, damage, or injury caused by it or by any connecting carrier.   The declaration in an action brought in a state court for nondelivery of a shipment of oil showed that the oil was shipped from Vicksburg, Miss., and consigned to Cincinnati, Ohio, that the shipment was an interstate shipment, and that it was delivered by the initial carrier to a connecting carrier in good condition at a point outside the local jurisdiction of the state court.   *Held*, that the action was one arising under a law of the United States, and was removable to the United States District Court, especially as the state court would have had no jurisdiction over the connecting carriers, but for the Carmack Amendment.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53;  Dec. Dig. ⬦19.]

2. REMOVAL OF CAUSES ⬦19—CAUSES REMOVABLE—ACTIONS ARISING UNDER UNITED STATES CONSTITUTION AND LAWS.

A suit arising under a law of the United States is no less removable to a federal court because the law involved has already been decided, construed, and settled by the United States Supreme Court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53;  Dec. Dig. ⬦19.]

3. COURTS ⬦508—INJUNCTION AGAINST STATE COURT—PROCEEDINGS AFTER REMOVAL.

In a shipper's action for nondelivery of an interstate shipment, defendants filed in the state court in which the action was brought a motion for an order removing the case to the United States District Court, and such motion was denied, whereupon the moving defendants filed a certified transcript of the record in the United States District Court.   Plaintiff was proceeding in the state court, and had procured an order requiring the defendants to plead before a day fixed, and the defendants thereupon filed a bill in the federal court to enjoin plaintiff from proceeding

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

in the state court, and applied for a temporary restraining order restraining further proceedings in the state court pending the hearing of the questions presented by the bill. *Held*, that the application for the restraining order was appropriate and justified, and should have been granted.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. ☞508.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Mississippi; Henry C. Niles, Judge.

Suit by the Alabama Great Southern Railway Company and others against the American Cotton Oil Company. From a judgment denying an application for a temporary injunction, complainants appeal. Reversed.

From the record before the court it appears that the American Cotton Oil Company, appellee, a corporation and citizen of the state of Ohio, brought its declaration in the circuit court of Warren county, Miss., against the appellants. They are the Alabama Great Southern Railway Company, a corporation and citizen of Alabama, and the Alabama & Vicksburg Railway Company, a corporation and citizen of Mississippi. For convenience, these will be termed the Alabama and Mississippi Railways. These railways are engaged in interstate commerce and transportation. In this capacity, at Vicksburg, the Mississippi Railway, on March 25, 1914, received a tank car of cotton seed oil. This oil was intended for the American Cotton Oil Company at Cincinnati, Ohio. The Mississippi Railway was the initial carrier, and the bill of lading indicated that the car was to be delivered at Meridian to the Alabama Railway, which was to transport it to Chattanooga, and deliver it to the Queen & Crescent Line, by which it was to be conveyed to Cincinnati.

The declaration in the state court alleged that this was an "interstate shipment, without exception," and that this was made plain by the bill of lading. This had attached a draft of the Colwell Oil Company in favor of the First National Bank of Vicksburg, Miss., for $3,538.08, drawn on the American Cotton Oil Company at Cincinnati, Ohio. The draft was paid. It was further alleged in the declaration that the car containing the oil was moved out of Vicksburg and delivered by the Mississippi Railway to the Alabama Railway at Meridian, in good condition and without exception, and, further, that after the car was thus received by the Alabama Railway it moved from Meridian, en route to Cincinnati, over the lines of the Alabama Railway, but never reached its point of destination, and the oil in question was lost or wasted en route and never delivered. An amicable demand was made upon these railways for payment of the value of the oil, but this was refused. The Colwell Cotton Oil Company then assigned to the American Cotton Oil Company all its right, title, and interest to the oil, and to its complaint against the railways for their failure to deliver the same according to the contract. They refusing and continuing to refuse payment, the declaration setting forth the Oil Company's cause of action was filed.

Having been served with process on January 9, 1915, the railways filed a plea of general issue, and on the 16th of January, the same year, the railways notified the attorneys of record for the Oil Company that they would, on the day to which the process was made returnable, move the state court for an order removing the case to the District Court of the United States for the Western Division of the Southern District of Mississippi. This motion was made, and its technical requisites were complied with. The motion came on for a hearing before the state court, to wit, the circuit court of Warren county, Miss., which adjudged that the cause was not removable. To this ruling the railways excepted, and then caused a certified copy of the declaration, and exhibits, notice of motion to remove, petitions, and bonds, and the order of the state court, and all the proceedings taken therein, to be filed in the District Court of the United States. This was done on the 13th day of February,

1915, and in that court the railways again filed their plea of general issue. It further appears that, notwithstanding the action of the railways in filing a transcript of the record in the District Court of the United States and further complying with the requisites of the statute providing for removal of causes from the state court thereto, the plaintiff, namely, the American Cotton Oil Company, insisted upon proceeding with the trial in the state court. Pursuant to this, that court, by order, required the railways to plead on or before the 3d day of May, 1915.

In this state of the record, the railways brought in the District Court of the United States, in which the transcript had been filed, a bill in equity against the American Cotton Oil Company. The bill recited the facts hereinbefore stated, and set out the act of Congress of June 29, 1906, amendatory of the Interstate Commerce Act, and termed the Carmack Amendment. This amendment provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed. Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." The bill further averred that the action was instituted by virtue of the act of Congress thus amended; that the declaration in the state court alleges that the Mississippi Railway was the initial carrier; that the oil was received as an interstate shipment, and that it was delivered to the Alabama Railway at Meridian, Miss.; that the latter operates a railroad line from Meridian, through the state of Alabama, to Chattanooga, in Tennessee; that the oil was consigned to Cincinnati, Ohio, and that it was not possible for either of the complainants to transport the oil to its destination without the assistance of connecting lines. Because of these facts, it was the purpose of the Oil Company to enforce the provisions of the Carmack Amendment in the state court; that indeed the Alabama Railway had no domicile in the county of Warren and could not have been sued separately therein, but could be so sued in connection with the initial carrier only because of the Carmack Amendment.

Averring that the District Court of the United States had original jurisdiction of all such suits of a civil nature, at common law, or in equity, which arise under the Constitution or laws of the United States, or statutes made or which shall be made under their authority, and further that because of such original jurisdiction such suits when brought in the state court may be removed by the defendant or defendants therein to the District Court of the United States for the proper district, the complainants further averred that this is a suit of that character, and that they had the right to have the same removed from the circuit court of Warren county, Miss., to the District Court having jurisdiction. Averring that the notice of petition to remove, together with copies of the petitions and bonds, were made and filed in time, they further aver that the state court where the declaration was filed, in view of the record thus made, had no right or authority to retain jurisdiction, that its order declining to remove the cause was illegal, and that the cause had been legally and properly removed to the United States court, and is now pending therein. Invoking the assistance of the District Court to prevent the American Cotton Oil Company from harassing the complainants by attempting to proceed with the suit in the state court, they pray for a writ of injunction directed to the Oil Company and its attorneys enjoining and commanding

them absolutely to refrain from attempting to further proceed with the suit in the circuit court of Warren county, and requiring them to prosecute the same in the Western division of the Southern district of Mississippi. Calling attention to the fact that the order of the state court required complainants to plead on or before the 3d day of May, 1915, that being the first Monday of the month of May, and that the District Court of the United States to which the cause was removed could not finally dispose of the controversy prior to that time, they ask for a temporary restraining order against the Oil Company and its counsel from further prosecution of the suit in the state court pending the hearing of the questions presented by the bill.

When the bill in equity came on to be heard before the District Court of the United States, the counsel for the Oil Company moved to dismiss the same for the assigned reasons that there is no equity in the bill; that it presents no ground for the granting of an injunction, no federal question for the determination of a federal court, and no facts which would authorize the removal of the suit pending in the state court to the federal court; that the alleged grounds for removal are shown not to exist as a matter of law on the face of the pleadings of the defendant, the plaintiff in the suit pending in the state court; and because the federal court for the Western division of the Southern district of Mississippi is without jurisdiction, because the questions related as constituting a federal question have been decided and settled by the Supreme Court of the United States, and therefore no federal question now exists as to the construction of the law involved in this case, etc. The application for temporary injunction sought in the bill was heard, and on the 19th day of May, 1915, it was by the court denied. This appeal was then sought and allowed.

The assignments of error are as follows: First, because the court erred in not decreeing that the application of complainants for temporary injunction be allowed; second, the court erred in refusing to grant the temporary injunction as prayed for in complainants' bill.

J: Blanc Monroe and Monte M. Lemann, both of New Orleans, La., Catchings & Catchings, of Vicksburg, Miss., and R. H. & J. H. Thompson, of Jackson, Miss., for appellants.

A: A. Armistead, of Vicksburg, Miss., for appellee.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge (after stating the facts as above). [1] Because of the probable recurrence of the question before the court, and others cognate, it has been thought proper to detail with some care the various facts of the transcript. We inquire, first, is the cause removable? The law relating to the question before the court is found in subdivision 1 of section 24 of the Judicial Code, defining the original jurisdiction of the District Court as follows:

"Sec. 24. The District Courts shall have original jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same state claiming lands under grants from different states; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different states, or (c) is between citizens of a state and foreign states, citizens or subjects. No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in

action if no assignment had been made: Provided, however, that the foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section."

Subdivision 8 of section 24 of the Judicial Code confers additional jurisdiction upon the District Courts of all suits and proceedings arising under any law regulating commerce, except those suits and proceedings exclusive jurisdiction of which has been conferred upon the Commerce Court. The Commerce Court having been subsequently abolished, the exception will doubtless fail.

For more than 40 years causes involving these issues, colloquially and often judicially termed "federal" questions, have been removable from a state court to a United States court. This appears from section 2 of the act of Congress enacted March 3, 1875. This provides:

"That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the Circuit Courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the Circuit Court of the United States for the proper district."

Abolishing the Circuit Court, the Judicial Code (section 28) adopts the language of the act of 1875 just quoted, except that the word "District" is used instead of the word "Circuit." It is clear, then, if it sufficiently appears from the pleadings that the controversy before the court arises under the Constitution and laws of the United States, by section 24 of the Judicial Code, the District Court would have original jurisdiction had the suit been brought therein. If such is found to be the case, then by virtue of the Judicial Code (section 28), when brought in the state court, it is removable to the District Court of the United States for the proper district.

Now, does the declaration disclose that the suit was one arising under the Constitution or laws of the United States? The amendment known as the Carmack Amendment, of June 29, 1906, to the Hepburn Act of Congress, has been set out in the statement heretofore made. It is intended to define the liability of a common carrier, like that charged here. The declaration in the state court alleges that the defendant companies are common carriers. The amendment related to contracts for transportation from a point in one state to a point in another state. The declaration alleges that the car of cotton seed oil was shipped out of Vicksburg, Miss., and that its destination was Cincinnati, Ohio. The act is designed to make the railway receiving the initial shipment liable for loss, damage, or injury to the property shipped, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or from whose line or lines such property may pass. The declaration recites that the oil was shipped from Vicksburg over the line of the Mississippi Company and was to be delivered at Meridian to the Alabama Great Southern Railway, and was to be routed by the Queen & Crescent to its destination  To the declaration was attached, as

Exhibit C, the bill of lading. This states the rate of freight from Vicksburg, Miss., to Cincinnati, Ohio. It contains this clause:

"Consigned to order of shippers, destination Cincinnati, state of Ohio. Notify American Cotton Oil Co. at Cincinnati; state of Ohio. Route Q. & C. [by which is meant Queen & Crescent]. Car initials A. C. O. X. Car No. 578. One tank of crude oil," etc.

In addition, the declaration alleges that it was an interstate shipment; that it was delivered by the Mississippi Railway to the Alabama Railway at Meridian; that, thus received, it moved from Meridian en route to Cincinnati, over the lines of the Alabama Railway, but said car never reached its point of destination, and the oil in question was lost or wasted en route and never delivered. The suit is brought for loss, damage, and injury. The amount claimed was over $3,000. Had this declaration been filed in the proper District Court of the United States, at a glance, it would have been seen to be a suit arising under a law of the United States. That law, of course, is the Carmack Amendment, designed to give relief to shippers in interstate commerce from just such injuries as the plaintiff in the state court alleged. The nature of the injury and the validity of the remedy is referred to in the opinion of the District Court in the Riverside Mills Case, 168 Fed. 990. That is arises under the Constitution is evident. The opinion just quoted, holding the amendment constitutional, was questioned with great ability by very eminent counsel soon to become a member of the Supreme Court, but the validity of the amendment in all respects was by that court upheld.

It is true that the plaintiff in the state court in its declaration made no formal mention of the Carmack Amendment, but substantial averments to that effect were clearly made, and this court will not, of course, look solely to the form, but to the substance also. Indeed, it is plain that, but for the Carmack Amendment, there would have been no semblance of jurisdiction in the state court. The declaration alleges that the car of oil was delivered by the Mississippi Railway to the Alabama Railway, at Meridian, in good condition, and without exception. The Mississippi Railway was then conceded to be not at fault. Warren county, where the suit was brought in the state court, is on the western boundary of Mississippi. Meridian, where the car and oil were delivered in good condition to the Alabama Railway, is on the eastern boundary. There was obviously no local jurisdiction over the Alabama Railway. In the absence of the national law, the plaintiff then would have been helpless. In Hutchinson on Common Carriers, § 1347, it is declared:

"In the case of successive lines of carriers, over all of which the goods must pass in order to reach destination, it would not be enough to show that the goods had never reached such destination, and must, therefore, have been lost or stolen somewhere upon the route; but, unless the first carrier by express or implied contract has assumed responsibility for the whole journey, the carrier by whose negligence or omission of duty the loss has occurred must be singled out, and the responsibility must be fixed upon him by the proof. Nor in such a case could the difficulty in fixing the responsibility where it properly belonged be obviated by suing all the carriers jointly over whose lines it was necessary for the goods to pass. For, unless it could be shown with which of them the fault lay, none of them could be held liable

without proof of a partnership or of some such association as would make them jointly and severally liable for each other's faults. And the inconvenience to the owner of the goods resulting from this rule is, as we have seen, the principal argument in favor of what is known as the doctrine of Muschamp's Case, and shows the importance to the shipper of a through contract with the first carrier upon the route, where that rule does not prevail."

But the Carmack Amendment made the first carrier assume responsibility. Over two years after the Riverside Mills Case was decided, the Supreme Court of the United States again considered this most salutary provision. It was in the case of Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. It held that:

"The Carmack Amendment legislated directly upon the carrier's liability for loss of and damage to interstate shipments."

In the first paragraph of the opinion, Mr. Justice Lurton, speaking for the court, seems to determine the question here at issue. He said:

"The answer relies upon the act of Congress of June 29, 1906, being an act to amend the Interstate Commerce Act of 1887, as the only regulation applicable to an interstate shipment, and avers that the limitation of value, declared in its bill of lading, was valid and obligatory under that act. This defense was denied. This constitutes the federal question and gives this court jurisdiction."

This opinion is also illuminative as to the general character of this clause of the Interstate Commerce Law.

"The significant and dominating features of that amendment," said the learned Associate Justice, "are these: First. It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor' when it receives 'property for transportation from a point in one state to a point in another.' Second. Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.' Third. It is also made liable for any loss, damage or injury to such property caused by 'any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass.' Fourth. It affirmatively declares that 'no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed.' "

It is not intended to intimate that jurisdiction of injuries of a general and civil nature in violation of this amendment may not be redressed in the state courts. In other words, the state courts have original jurisdiction of such issues. It has been held that where the action is not penal, but civil and transitory, it might be asserted in a state court as well as in those of the United States. Galveston, H. & S. A. R. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516. That was a suit against an initial carrier in an interstate shipment. It, like this, was based on a failure to deliver goods shipped in interstate commerce. The carrier insisted that the state court had no jurisdiction and that the complaint could only be made under the provisions of sections 8 and 9 of the Interstate Commerce Act, before the Interstate Commerce Commission, or in some District or Circuit Court of the United States. The Supreme Court held otherwise, and conceded the jurisdiction of the state court. It made, however, thi important statement; Mr. Justice Lamar rendering the opinion:

229 F.—2

"The real question, therefore, presented by this assignment of error, is whether a state court may enforce a right of action arising under an act of Congress."

The language "arising under an act of Congress," of course, imports "arising under the Constitution and laws of the United States." There, then, was a recognition of the character of the right of action, which, as stated, was the same as in this case. But that was not a case of removal. While, then, the state court has original jurisdiction of a right of action arising under an act of Congress, such action may be removed to a court of the United States. In the case of Louisville & Nashville R. R. Co. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126, the court declared:

"It is the settled interpretation of these words, as used in the statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."

It follows that, when the plaintiff's statement does show that it "is based upon the laws or that Constitution," jurisdiction in a court of the United States does exist. To determine whether or not a case arises under the laws of the United States, the following cases cited and discussed in the very satisfactory brief of counsel for the appellants will be found additionally instructive: Tennessee v. Davis, 100 U. S. 264, 25 L. Ed. 648; Nashville, C. & St. L. Ry. v. Taylor (C. C.) 86 Fed. 177; Texas & Pacific Ry. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Seaboard Air Line Ry. v. Duvall, 225 U. S. 477, 32 Sup. Ct. 790, 56 L. Ed. 1171; St. L., I. M. & So. Ry. v. Taylor, Adm'r, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984. Indeed, if the declaration presenting the plaintiff's cause of action to the circuit court of Warren county had been filed in the District Court of the United States for the Western Division of the Southern District of Mississippi, it would have required no alteration to obtain standing there, save the heading setting forth the designation of the court from the action of which redress was sought.

The formidable array of authorities cited by the learned counsel for the appellee in their brief merits careful attention. The Wallace Case, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516, supra, has already been considered. Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544, 28 L. Ed. 542, is also relied upon to sustain the contention of the defendant in error. That, however, was a habeas corpus case, and the court held that Congress had not undertaken to invest the judicial tribunals of the United States with exclusive jurisdiction to issue writs of habeas corpus, and subject to the exclusive authority of the national government, in its own courts, to determine whether persons held in custody by authority of the United States were properly so held, the states have the right by their own courts or judges to inquire into the grounds upon which any person within their respective territorial limits is restrained of his liberty, notwithstanding the illegal restraint may arise from a violation of the Constitution and laws of the United States. That ruling, while instructive, is in no sense de-

cisive of the right of removal to the United States court which is presented in this case, and was not presented in that.

In the case of Germania Insurance Co. v. Wisconsin, 119 U. S. 473, 7 Sup. Ct. 260, 30 L. Ed. 461, cited by appellee, the true issue was whether or not a certain person was an agent of a nonresident insurance company; that is to say, a case in which the state itself was a party, attempting to enforce statutory penalties on the company for doing business in the state without complying with the laws. Obviously that did not present a question arising under federal law.

Ames v. Kansas ex rel. Johnson, Atty. Gen., et al., 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482, also cited, was a proceeding in the nature of quo warranto, instituted by a state in its own courts to try the right of a corporation to exercise corporate powers within the territorial limits of the state; it involved also the right of removal. There, in a learned and extended opinion by Chief Justice Waite, the action of the lower court remanding the cause was reversed. The decision was based largely upon rulings of Chief Justice Marshall in Osborn v. Bank of United States, 9 Wheat. 825, 6 L. Ed. 204, who declared:

An act of Congress "is the first ingredient, * * * is its origin, is that from which every other part arises."

And upon the case of Cohens v. Virginia, 6 Wheat. 264, where on page 379, 5 L. Ed. 257, Chief Justice Marshall declared:

"The jurisdiction of the court, then, being extended * * * to all cases arising under it, or under the laws of the United States, it follows that those who would withdraw any case of this description from that jurisdiction must sustain the exemption they claim on the spirit and true meaning of the Constitution, which spirit and true meaning must be so apparent as to overrule the words which its framers have employed."

In the case of Starin v. New York, 115 U. S. 257, 6 Sup. Ct. 28, 29 L. Ed. 388, upon which appellee places reliance, the question was whether the city of New York has the exclusive right to establish ferries between Manhattan Island and the shore of Staten Island, on the Kill von Kull. This was a removal case. There Chief Justice Waite declared that the character of a case is determined by the questions involved, citing Osborn v. Bank of the United States, 9 Wheat. 825, 6 L. Ed. 204, supra. He also stated, on page 258 of 115 U. S., on page 31 of 6 Sup. Ct., 29 L. Ed. 388:

"It is not pretended that the United States have in any manner attempted to interfere with the power of a state to grant exclusive ferry privileges across public waters between places within its own jurisdiction. * * *"

For the reason that the decision of the question involved did not depend on the Constitution or laws of the United States, and for the further reason that there was no such separate controversy as would enable one of the defendants to remove the case, it was remanded.

In Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314, et seq., also cited, a marshal of the United States was sued for trespass for seizing property in the performance of his duty. There Mr. Justice Harlan stated for the unanimous court:

"A case, therefore, depending upon the inquiry whether a marshal or his deputy has rightfully executed a lawful precept directed to the former from a court of the United States, is one arising under the laws of the United States; for, as this court has said, 'cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted'—citing Tenn. v. Davis, 100 U. S. 257, 25 L. Ed. 648; Railroad Co. v. Miss., 102 U. S. 135, 26 L. Ed. 96."

The right of removal was upheld.

In the case of Tennessee v. Union & Planters' Bank, 152 U. S. 464, 14 Sup. Ct. 654, 38 L. Ed. 511, it was held that the court had no jurisdiction either original or by removal from a state court, as one arising under the laws of the United States, unless that appears by the plaintiff's statement of his own claim. But, as stated, that does abundantly appear in the case now before the court.

In Devine v. Los Angeles, 202 U. S. 313, 26 Sup. Ct. 652, 50 L. Ed. 1046, there was a question of original jurisdiction. This was sought by allegations that the defendants' adverse claims to the surface and subterranean waters of the Los Angeles river were based on an erroneous construction of the treaty of Guadalupe Hidalgo, the act of 1851, and certain state acts and city ordinances. Mr. Chief Justice Fuller, for the court, said:

"A bill in equity will not lie to dispel mere verbal assertions of ownership or to adjudge state statutes and charters unconstitutional and void. If the statutes and charters are unconstitutional, they are void and cannot constitute a cloud on title."

And further that:

"Where complainant claims title to land in California under Mexican grants confirmed by the Board of Land Commissioners, as the state of California is not in the line of such titles, a statute of that state conferring water rights on a city does not deprive complainants of their property or impair the obligation of any contract, as the state can only confer whatever rights in such waters had vested in it."

The court also held that the jurisdiction of the federal question must appear necessarily in the statement of the plaintiff's cause of action, citing Third Street Ry. Co. v. Lewis, 173 U. S. 457, 19 Sup. Ct. 451, 43 L. Ed. 766. Since in this the declaration of the plaintiff in the state court, as we have seen, in practical substance sets out its right, under the amendment to the act of Congress regulating interstate commerce, this case, while valuable in a general sense, is not particularly illuminative as to the duty of the court in the utterly differing case before us.

In Bankers' Casualty Co. v. Minnesota, 192 U. S. 373, 24 Sup. Ct. 325, 48 L. Ed. 484, an action was commenced in the Circuit Court by a citizen of one state against a railroad company, a citizen of another state, for damages for a loss of a registered mail package, where the plaintiff relied on principles of general law applicable to negligence and to the liability of defendant, if there was negligence, the fact that the suit involved the relations of the railroad company to the government did not put in controversy the construction of any provision of the Constitution or of any law of the United States on

which the recovery depended. The material facts were that the defendants' roadmaster entered the depot, unlocked the mail bag with a key he had unlawfully caused to be made, abstracted the package of currency, and converted its contents, that the room where the mail bag was placed was "not designed or capable of safely keeping valuable articles or property," and that it was through the negligence of defendant and its station agent that the man gained entrance to the room and obtained access to the mail bag. This was a case of burglary, and obviously did not present a federal question, and the court so held.

It is true, as is plausibly contended by counsel for defendant in error, that in Gold Washing & Water Co. Case, 96 U. S. 203, 24 L. Ed. 656, and in a number of cases to sustain removal, it is said: "It may become necessary to give a construction to the Constitution or laws of the United States." But in that case, not only did Mr. Justice Bradley dissent, but the court, Chief Justice Waite delivering the opinion declared that the "decision is to be considered as conclusive only upon the question directly involved and decided." The learned justice also adds, on page 203 of 96 U. S., 24 L. Ed. 656: "The suit must, in part at least, arise out of a controversy between the parties in regard to the *operation and effect* of the Constitution or laws upon the facts involved." Now it is difficult to conceive a case brought for violation of the Carmack Amendment of the Interstate Commerce Law which does not depend upon the operation and effect of that law. The true rule, we think, is very properly stated in Black's Dillon on Removal of Causes, § 109, pp. 180, 181, where a federal question is defined to be:

"A controversy or dispute between the parties, and that controversy must be not merely upon the question of fact, but upon the validity, interpretation, effect, or applicability of the law of the United States."

[2] It is insisted with apparent earnestness by the appellee that no cause is removable where the law involved has once been decided, construed, and settled by the Supreme Court of the United States, and the Riverside Mills Case, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, is referred to as having construed and settled the Carmack Amendment. Since, however, the law relating to removal of causes because of a federal question is precisely the same as that upon which the original jurisdiction of the federal court because of such question depends, this contention, if meritorious, would seem to destroy the original jurisdiction and the right of removal as well. To state it otherwise, because the law has been definitely settled by the highest authority, if the learned counsel for defendant in error are correct in this proposition, it can no longer be utilized, except perhaps in a state court. We find it difficult to assent to reasoning which evolves this conclusion.

Nor has the Riverside Mills Case conclusively settled all construction and interpretation of the Carmack Amendment. This is made evident by the case of Adams Express Co. v. Croninger, already quoted, and other cases. Vide St. L. S. W. Ry. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Kansas

City Southern Ry. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Norfolk & West. Ry. v. Dixie Tobacco Co., 228 U. S. 593, 33 Sup. Ct. 609, 57 L. Ed. 980. It may be safely conceded that, if courts and litigants always observed and maintained absolute deference to settled law, this contention might have greater force. We have as yet, however, not attained that perfectability of which Plato dreamed in the Gardens of the Academy; and, however ample may have been the construction and interpretation of the law by the Supreme Court, its "effect and applicability" to the facts of each case, it being a law of the United States, will open the courts of the United States to those who seek the remedies which it affords, and as well to those who would make defense to averments of wrong and injury, which it authorizes such courts to hear.

In view of all of the authorities cited, and others which might be cited, we conclude, in the apposite language of Mr. Justice Bradley, in Provident Savings Society v. Ford, 114 U. S. 642, 5 Sup. Ct. 1104, 29 L. Ed. 261, quoted by Judge Maxey in Clark v. So. Pac. Ry. (C. C.) 175 Fed. 122:

This suit "is pervaded from its origin to its close by United States law and United States authority."

After that careful consideration which the importance of the controversy deserves, the court is clearly of the opinion that the right of removal exists and should be upheld.

[3] The remaining question is: Was the application for injunction or temporary restraining order in the District Court appropriate? This question was early presented to the Supreme Court of the United States. In French, Trustee, v. Hay, 22 Wall. 250, note, 22 L. Ed. 857, the power of injunction was exercised to prevent a party whose case had been removed to a United States court from pursuing his remedy even in a state court of another state. There, too, the complainant relied upon a transcript of the record, as in this case. Said Mr. Justice Swayne, for the unanimous court:

"This bill is not an original one. It is auxiliary and dependent in its character, as much so as if it were a bill of review. The court, having jurisdiction in personam, had power to require the defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory. Having the possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive, and could not be trenched upon by any other tribunal. The court below might, upon a cross-bill, and perhaps upon motion, have given the relief which was given by the interlocutory and the final decree in the case before us. If it could not be given in this case, the result would have shown the existence of a great defect in our federal jurisprudence, and have been a reproach upon the administration of justice. * * * The prohibition in the Judiciary Act against the granting of injunctions by the courts of the United States touching proceedings in the state courts has no application here."

This case was reaffirmed in Dietsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497. More distinctly conclusive is Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L.

Ed. 462. There Mr. Justice Harlan delivered the opinion of the court, and with his accustomed care cited the authorities. Said this learned jurist, in part:

"Certain principles, relating to the removal of cases, have been settled by former adjudications. They are: (1) If a case be a removable one, that is, if the suit, in its nature, be one of which the Circuit Court could rightfully take jurisdiction, then upon the filing of a petition for removal, in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it is pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void. * * * (2) After the presentation of a sufficient petition and bond to the state court in a removal case, it is competent for the Circuit Court, by a proceeding ancillary in its nature— without violating section 720 of the Revised Statutes, forbidding a court of the United States from enjoining proceedings in a state court—to restrain the party against whom a cause has been legally removed from taking further steps in the state court. French, Trustee, v. Hay, 22 Wall. 238 [22 L. Ed. 854]; Dietsch v. Huidekoper, 103 U. S. 494 [26 L. Ed. 497]; Moran v. Sturges, 154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981]. See also, Sargent v. Helton, 115 U. S. 348 [6 Sup. Ct. 78, 29 L. Ed. 412]; Harkrader v. Wadley, 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399]; Gates v. Bucki, 53 Fed. 961 [4 C. C. A. 116]; Texas & Pacific Ry. v. Kuteman, 54 Fed. 547 [4 C. C. A. 503]; In re Whitelaw [D. C.] 71 Fed. 733; Iron Mountain Ry. v. Memphis, 96 Fed. 114 [37 C. C. A. 410]; James v. Central Trust Co., 98 Fed. 489 [39 C. C. A. 126]."

In view of these considerations, we hold that the case was removable; that the application for restraining order, or temporary injunction was appropriate and justified, and should have been granted; and that the judgment of the District Court denying the same should be reversed. It is so ordered.