# BOCK *v.* PERKINS.

**ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.**

No. 285. Argued April 2, 3, 1891. — Decided April 13, 1891.

A marshal of the United States, or his deputies, being sued in trespass for seizing particular property under an attachment, to him directed, and defending upon the ground that the property, so seized, belonged to the defendant named in the writ of attachment, may have the case — the amount in dispute being sufficient — removed to the proper Circuit Court of the United States, as one arising under the laws of the United States.

A deed of assignment for the benefit of creditors, recited the indebtedness of the assignor, his inability to pay his debts with punctuality or in full, and his desire to make "a fair and equitable distribution of his property among all his creditors," and provided that the assignor "has bargained, sold and assigned, and does hereby grant, convey and assign," unto the assignee "all the lands and all the personal property of every name and nature whatsoever of the said party of the first part, more particularly enumerated and described in the schedule hereto annexed, marked Sched-

ule A, or intended so to be. . . . Schedule B, hereto annexed, contains, as near as I can state, a list of all my creditors and the amount of their respective demands, and both of said Schedules A and B are hereby made part of this assignment." Schedule A, annexed to the assignment, contained an inventory of certain real estate, and a list of persons indebted to the assignor, and was verified by his oath to the effect that it contained a true list of the assignor's creditors and the amount of their respective demands. But it contained no clause or provision which, by any construction, embraced a stock of goods worth about $10,000, and constituting, at the time, the bulk of the assignor's estate. *Held,* That the title to these goods did not pass to the assignee, and remained subject to attachment as the property of the assignor. The general description in the assignment of the property conveyed is limited by the particular description immediately following in the same clause referring to Schedule A.

The statutes of Iowa relating to assignments for the benefit of creditors refer to *general* assignments, by which the assignor makes a disposition of all his property for the benefit of all his creditors. They do not relate to partial assignments which are permissible under the laws of that State.

THE case is stated in the opinion.

*Mr. D. E. Lyon* for plaintiff in error. *Mr. H. B. Fouke* was with him on the brief.

*Mr. Francis B. Daniels* and *Mr. Louis G. Hurd* for defendants in error. *Mr. David B. Henderson* was with them on the brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action involves the title to a certain stock of goods seized under attachments sued out against the property of H. P. Lane from the Circuit Court of the United States for the Northern District of Iowa, and directed to the marshal of that district for execution. The goods, when seized, were in the possession of the plaintiff in error, who claimed the right to hold them under an assignment made to him by Lane before the attachments were issued. Bock seeks to recover from Perkins, the marshal, and from Thrift and Hopkins, his deputies, damages in the sum of ten thousand dollars for their seizure. The defence was, that the goods were the property of Lane at

the time of the seizure, and, therefore, were liable to be taken under the attachments. Upon the petition of the defendants, accompanied by a proper bond, and an affidavit setting forth the nature of the defence, the case was removed into the court below for trial as one arising under the laws of the United States. The plaintiff moved to remand it to the state court. The motion was denied, and by direction of the court the jury returned a verdict for the defendants. A judgment in their favor was accordingly entered. *Bock* v. *Perkins*, 28 Fed. Rep. 123.

The court below properly retained the case for trial. Every marshal of the United States, as well as his deputy, must take an oath or affirmation that he will faithfully execute all lawful precepts directed to him, and in all things well and truly perform the duties of his office. The marshal must also give bond, with sureties, for the faithful performance of the duties of his office by himself and deputies. And marshals and their deputies have, in the respective States, the same powers in executing the laws of the United States as sheriffs and their deputies have in executing the laws of such States. Rev. Stat. §§ 782, 783, 788. A case, therefore, depending upon the inquiry whether a marshal or his deputy has rightfully executed a lawful precept directed to the former from a court of the United States, is one arising under the laws of the United States; for, as this court has said, "cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defence of the party, in whole or in part, by whom they are asserted." *Tennessee* v. *Davis*, 100 U. S. 257, 264; *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 141. If the goods in question, when seized, were the property of Lane, the marshal and his deputies were in the discharge of duties imposed upon them by the laws of the United States; and for any failure in that regard he would be liable to suit by any one thereby injured. Rev. Stat. § 784. This case was, therefore, one arising under the laws of the United States, and removable from the state court. *Feibelman* v. *Packard*, 109 U. S. 421, 423; *Bachrack* v. *Norton*, 132 U. S.

337; *Reagan* v. *Aiken*, 138 U. S. 109; *Houser* v. *Clayton*, 3 Woods, 273; *Ellis* v. *Norton*, 16 Fed. Rep. 4.

No different doctrine was announced in *Buck* v. *Colbath*, 3 Wall. 334. On the contrary, that case sustains the view we have just expressed. Colbath sued Buck in a state court in trespass for taking his goods, the latter pleading simply that he was marshal of the United States, and had seized the goods under an attachment against the property of certain parties named therein, but not averring that the goods belonged to the defendants named in the writ. This court, upon error to the highest court of the State, held that the marshal was guilty of trespass in levying upon the property of one against whom the writ did not run, and could be sued therefor in a state court — the *mere* fact that the writ issued from a Federal court constituting no defence. The judgment in that case against the marshal was reviewed here under the act of Congress authorizing such review in cases where a party specially claimed the protection of an authority exercised under the United States, and the decision withheld the protection so claimed. The decision sustains the proposition that where a marshal, being sued in trespass in a state court for taking property under a writ of attachment to him directed, defends upon the ground that the property attached belonged to the defendant named in the writ, the case is one arising under the laws of the United States, and therefore removable.

We come now to the principal question in the case. The plaintiff claims title to the goods attached under an instrument of writing, executed on the day it bears date, as follows:

"This indenture, made the 20th day of November, A.D. 1884, between Henry P. Lane, of New Albin, Allamakee County, and State of Iowa, of the first part, and Wm. O. Bock, of said county and State, of the second part:

"Whereas the said Henry P. Lane is justly indebted in considerable sums of money, and has become unable to pay the same with punctuality or in full, and is now desirous of making a fair and equitable distribution of his property among all his creditors, now this indenture witnesseth · That the said party

of the first part, in consideration of the premises and of the
sum of one dollar to him paid by the party of the second part,
the receipt whereof is hereby acknowledged, has granted, bar-
gained, sold and assigned, and does hereby grant, convey and
assign, unto the said party of the second part and to his assigns
forever, all the lands and all the personal property of every
name and nature whatsoever of the said party of the first part,
more particularly enumerated and described in the schedule
hereto annexed, marked Schedule 'A,' or intended so to be,
upon the following trusts, viz.: To take possession of said
lands and property and sell said lands, unless otherwise di-
rected by the Circuit Court of Allamakee County, State of
Iowa, on notice published as in cases of sales of real estate on
execution, and dispose of said personal property upon such
terms as in his judgment may appear best, but not on credit,
and hold the proceeds of sales of all said lands and personal
property for distribution among all the creditors of said party
of the first part, in accordance to such orders and directions as
may from time to time be made by said Circuit Court, and
shall, after final settlement and distribution be made, and all
the reasonable expenses, rents, taxes, assessments, commissions
and allowances are paid, return any surplus there may be of
the proceeds of the sales of the assigned property to the party
of the first part or his assigns; also to reconvey and reassign,
to him or them any real or personal property remaining un-
sold.   Schedule B, hereto annexed, contains, as near as I can
state, a list of all my creditors and the amount of their respec-
tive demands, and both of said schedules A and B are hereby
made part of this assignment.   Witness my hand the day and
year first above written.

    "In presence of —                    HENRY P. LANE.
      "SAM'L H. KINNE."


    Bock, on the same day, accepted the trust created by this
instrument and agreed to execute its provisions.

    Schedule A, annexed to and made part of the assignment,
contained an inventory of certain real estate, and a list of the
names of about one hundred and fifty persons indebted to the

assignor; but no mention was made in it of the stock of goods in question. It was verified by his oath to the effect that, according to the best of his knowledge, it contained a true statement and account of his estate, both real and personal. Schedule B, also annexed to and made part of the assignment, contained a list of the assignor's creditors, about fifty in number, with the amount of their respective demands. It was verified by Lane's oath to the effect that it contained a true list of all his creditors and the amount of their respective demands.

Lane was engaged in mercantile business at New Albin, Allamakee County, Iowa, when the assignment was made, and owned the goods alleged to have been wrongfully taken under the attachments. After the assignment was executed and acknowledged, Bock took possession of them. He caused an inventory to be made and put the assignment on record before the attachments were levied. At the time of the assignment he was in Lane's employment and had charge of his mercantile business.

The court charged the jury that as the goods in question were not enumerated or described in the schedule annexed to and made part of the assignment, and could not by any construction of its clauses be included in it, the title did not pass to Bock, and they were rightfully attached as the property of Lane. It also held that the defendants were entitled to a verdict upon the further ground that, if the instrument were treated as a general assignment under the statutes of Iowa regulating assignments for the benefit of creditors, it was void because, when taken in connection with certain conveyances executed about the same time by the assignor for the benefit of his wife and wards — all the instruments constituting, in the judgment of the court, one transaction — it gave a preference to some creditors over others, in violation of the statute, and for that reason was void. *Van Patten* v. *Burr*, 52 Iowa, 518, 521.

Did Lane's stock of goods pass to Bock by the assignment of November 20, 1884? If not, they were rightfully attached as his property. Although Lane, in the assignment, expressed

his inability to pay his debts with punctuality or in full, as well as the desire to make a fair and equitable distribution of "his property among all his creditors," and although the first part of the granting clause embraces "all the lands and all the personal property of every name and nature whatsoever" of the assignor, the property bargained, sold and assigned is stated in the words immediately following, in the second part of the same clause, to be that "more particularly enumerated and described in the schedule, hereto annexed, marked Schedule A, or intended so to be;" which schedule, together with Schedule B, is made, by express words, part of the assignment. The schedule which thus particularly enumerated and described the property conveyed is, therefore, as much a part of the assignment as if it were embodied in it, word for word. In that view, the general description in the first part of the granting clause must be held to be limited by the words which immediately follow, indicating that the property, real and personal, intended to be conveyed, was enumerated in the schedule annexed. The particular description must control the previous general description in the same clause, although the words "general assignment" are at the head of the instrument. Nor is the result affected by the words "or intended so to be," following the words "Schedule A;" for what was intended must be determined by reference to the schedule, which is expressly stated, in the instrument of assignment, to contain a description of the property which was assigned to Bock. This interpretation is said to be inconsistent with the purpose of the assignor, avowed in the assignment, to make a fair and equitable distribution of his property among all his creditors. But this language must be taken in connection with other parts of the instrument, showing that the distribution proposed had reference only to the property particularly enumerated in the schedule. We must assume that Lane did not verify Schedule A by his oath, without reading or understanding what it contained. While, by accident or inadvertence, he might have omitted from it property of trifling value, it is unreasonable to suppose that the omission from the schedule, declared to contain a more particular enumeration

and description of the property assigned, of his stock of goods
worth nearly $10,000, and constituting the bulk of his estate,
was by inadvertence.  Bock was present when the schedules
were prepared, and it cannot be that he and Lane both were
unaware of the fact that Schedule A contained nothing which,
by any possible construction, could include the goods in Lane's
store.  Why these goods were omitted from Schedule A
would be a matter of mere conjecture.  The probability is,
that the assignment and schedule were not prepared at the
same time, and that the conclusion ultimately reached by
Lane was to make only a partial assignment, which was per-
missible under the laws of Iowa, and, through Bock, his clerk
and assignee, retain control of the goods in the store without
subjecting the latter to responsibility to creditors for their
management;  for, by the terms of the assignment, the
assignee would only be liable to them for the proper manage-
ment and distribution of the property enumerated and de-
scribed in Schedule A, made part of the assignment.  Be this
as it may, and without saying that the intention of the parties
could be ascertained by parol evidence or otherwise than from
the assignment itself, we are of opinion that the better and
safer construction is, that the general words in the first part
of the granting clause are limited by the particular descrip-
tion in the latter part of the same clause of the property
actually conveyed to the assignee.  These views are sustained
by the weight of authority.  And we are referred to no deci-
sion of the Supreme Court of Iowa to the contrary.  So that
whether the property in question passed to Bock, by virtue of
the assignment, is to be determined by the general rules gov-
erning the interpretation of written instruments, the control-
ling one of which is that effect must be given to the intention
of the parties as disclosed by the instrument to be construed.

It will be well to refer to some of the adjudged cases.  A
leading one upon the subject is *Wilkes* v. *Ferris*, 5 Johns. 335,
345, in which an assignment for the benefit of creditors con-
veyed "all the goods, property, wares, merchandises, chattels,
vessels, debts, sum and sums of money, claims and demands
and effects, belonging to, and now due and owing to, the said

Henry Cheriot, or to which, and in which, he has any right, property, claim or demand, which said goods, wares and merchandises, hereby granted and sold, are particularly described and enumerated in the Schedule A, signed by the said Henry Cheriot, and to these presents annexed, etc." It was contended that the assignment was broad enough to embrace any article not contained in the schedule.   But the court said: "This was not, in fact, a general assignment of *all Cheriot's* estate; for though the words, in one place, be general, yet the assignment immediately goes on to specify, by a reference to the schedules annexed, the specific articles of property assigned; and it therefore could operate only upon the articles specified; for, as the court said in *Munro* v. *Alaire*, 2 Caines, 327, [Chief Justice Kent delivering the opinion,] if a general clause be followed by special words, which accord with the general clause, the deed shall be construed according to the special matter." This case has been often cited with approval.   In *Driscoll* v. *Fiske*, 21 Pick. 503, 505, 507, the court construed an assignment made by partners in trust for the benefit of their creditors, who should become parties to it, of "all their books, stock in trade, printing apparatus and machinery, books of account, book debts, notes and demands and all their other property of every name and nature, except such as is exempt from attachment, most of the same being now at their place of business, a schedule of which is annexed, and other and fuller schedules of the property hereby assigned shall be hereunto annexed as soon as the same can be conveniently made." The schedule contained three items, namely, "stock of books in store — printing presses and materials — notes and demands, etc."   A creditor subsequently attached certain furniture remaining in the possession of one of the partners, after which the assignees inserted it in the schedule.   The furniture was held subject to the attachment.   The court said: "The general phraseology in the assignment is sufficient to include the furniture which is in question.   The conveyance of certain property specified, and of all other property of every name and nature except such as is exempt from attachment, might well be construed to mean all the property which the assignors

had jointly or each of them had severally. But we are to take the whole instrument into consideration, in order to ascertain the true intent and meaning of the parties. . . . The general words are restrained by reference to the schedules which were annexed before the attachment was made. So that the assignment, independently of the parol evidence, cannot by fair construction be said to include the furniture of the individual assignors. *Wilkes* v. *Ferris*, 5 Johns. 335." In the same case it was held that parol evidence that it was intended to include the furniture in the conveyance, tended to contradict, not explain, the writing, and was inadmissible. See also *Tucker* v. *Clisby*, 12 Pick. 22.

In *Mims* v. *Armstrong*, 31 Maryland, 87, the precise question here presented was decided. The deed of assignment for the benefit of creditors in that case declared that the assignor was "indebted to divers persons in divers sums of money, which, by reason of sundry losses and misfortunes, he has become unable to pay in full, and is desirous of providing for the payment thereof, as far as he can, in a just and equitable manner, by assignment of all his property and effects for the purpose;" and it conveyed "all and singular his goods, chattels, promissory notes, debts, wares, merchandise, securities and vouchers, for and affecting the payment of money, claims, demands, choses in action and property of every name and nature whatever, of and belonging to him, and which are more particularly and fully enumerated in the schedule hereto annexed, marked Schedule 'A.'" The assignee sought to recover certain money, not named in the schedule annexed to the assignment, and which had been appropriated by particular creditors of the assignors to their own use. The court, holding that the money did not pass by the assignment, said: "In the grant before us the general descriptive words employed would certainly be sufficient, in the absence of any restrictive clause, to pass all the debtor's property; but we must suppose that the grantor had a purpose in the more particular description which he thought proper to give in the schedule, and that that purpose was what he declares it to be, a more particular and full description of the property conveyed. To withhold this meaning from the

words of reference to the schedule is to deny to them all import whatever; and that is justified by no rule of construction. If instead of referring to the schedule for a particular description of the property, the grantor had followed the general description with such words as namely, that is to say, or, as follows, and set out in the body of the assignment itself the items enumerated in the schedule, there could hardly have been a doubt but that the preceding general words of description would have been restrained and confined to the subsequent enumeration. And if that be so, how does the fact that the schedule, instead of being incorporated in the body of the deed, is on a separate sheet of paper annexed thereto, change in any manner the application of the principle? For, the schedule being a part of the deed, we should read it as if inserted in the body of that instrument."

The above cases, in our judgment, rest upon sound rules of interpretation. To the same effect are *United States* v. *Langton &c.*, 5 Mason, 280, 288; *Guerin* v. *Hunt*, 6 Minnesota, 375; *Wood* v. *Rowcliffe*, 5 Eng. Law & Eq. 471; *McAlpine* v. *Foley*, 34 Minnesota, 251; *Rundlett* v. *Dole*, 10 N. H. 458; *Belding* v. *Frankland*, 8 Lea (Tenn.), 67; and *Scott* v. *Coleman*, 5 Littell, 349. See also Burrill on Assignments, 5th ed. pp. 192 to 198.

Numerous authorities are cited for the plaintiff which are supposed to announce a contrary doctrine. Most of them, however, will be found, upon careful examination, to proceed upon the peculiar wording of the instruments construed. Among these cases is *Bank of Tennessee* v. *Horn*, 17 How. 157, 159, 160, where the question was whether a certain lot was embraced in a cession made for the benefit of creditors under a statute of Louisiana, approved March 26, 1826, relating to the voluntary surrender of property by insolvent persons. Laws of La. 1826, p. 136. That case does not bear upon the question here, for the court held it to be apparent that the lot in question was intended to be included in the debtor's schedule, but was imperfectly and erroneously described in it; and by the local statute, all the property of an insolvent petitioner, mentioned in his schedule, was fully

vested in creditors from and after the cession and acceptance — the duty of the syndic being to take possession of it, and to administer and sell for benefit of the creditors. "Consequently," Chief Justice Taney said, "if, under the ambiguous or erroneous description in the schedule, this lot must be regarded as omitted, it still passed by the cession." That was not, then, a case of property being omitted altogether from a schedule, made part of an assignment, and describing the property assigned. Equally inapplicable is the case of *National Bank* v. *Bank of Chicago*, 94 Illinois, 271, 279, where the question was whether the claim of a particular bank was included in a deed of assignment for the benefit of creditors, which, after providing that the assignee should, out of the proceeds of the trust property, if sufficient, pay all the debts due "to the parties severally named in the schedule of creditors, to be hereunto annexed," added, "it being intended to include in said schedule the names of all the creditors of the party of the first part, with the amount due to each of said creditors." The bank referred to was not named in the schedule subsequently prepared and annexed, but the court held that it was not excluded from participation in the assets; observing, that the language last above quoted would not have been used if the purpose had been to exclude some creditors from the list to be subsequently made and incorporated in the schedule. It requires no argument to show that this decision has no application to the case before us. In support of the plaintiff's position reference was also made to *Platt* v. *Lott*, 17 N. Y. 478, and *Turner* v. *Jaycox*, 40 N. Y. 470. But of these cases it was said in *Holmes* v. *Hubbard*, 60 N. Y. 183, 185, that the instruments construed in them were general assignments of all the property and effects of the assignors for the payment of all their debts. And, in the later case of *Emigrant Industrial Savings Bank* v. *Roche*, 93 N. Y. 374, 378, it was said that "it is a rule for the construction of all written instruments conveying property, that if a general clause be followed by special words, the instrument shall be construed according to the special matter; and in the application of this rule it is held that the general words of an assign-

ment should be restricted by a subsequent clause referring to a schedule annexed for a more full description;" citing *Wilkes* v. *Ferris* and *Holmes* v. *Hubbard*, above cited. Similar criticism could be made upon other authorities relied upon by the plaintiff. But it is unnecessary to extend this opinion by an examination of them.

The plaintiff lays stress upon the Iowa statute relating to assignments for creditors in force when Lane's assignment was made. That statute provides that "no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims;" that "the debtor shall annex to such assignment an inventory, under oath, of his estate, real and personal, according to the best of his knowledge, and also a list of his creditors and the amount of their respective demands; but such inventory shall not be conclusive [as] to the amount of the debtor's estate; and such assignment shall vest in the assignee the title to any other property belonging to the debtor at the time of making the assignment; . . ." that "the assignee shall at all times be subject to the order and supervision of the court or judge, and the said court or judge may, by citation and attachment, compel the assignee, from time to time, to file reports of his proceedings, and of the situation and condition of the trust, and to proceed in the faithful execution of the duties required by this chapter;" that "no assignment shall be declared fraudulent and void for want of any list or inventory as provided in this chapter;" and that "the court or judge may, upon application of the assignee or any creditor, compel the appearance in person of the debtor before such court or judge forthwith, or at the next term, to answer under oath such matters as may then and there be inquired of him, and such debtor may then and there be fully examined under oath as to the amount and situation of his estate, and the names of the creditors and amounts due to each, with their places of residence; and may compel the delivery to the assignee of any property or estate embraced in the assignment." 1 McClain's Ann. Stat. Iowa

(ed. 1880), 592, §§ 2115, 2117, 2123, 2124 ; (ed. 1888), §§ 3292, 3294, 3302, 3303, p. 849.

We do not perceive that these statutory provisions determine the question before us. In the event of a *general* assignment of property, by one insolvent or in contemplation of insolvency, for the benefit of creditors, the debtor is required to annex to the assignment an inventory of his estate, and the assignment is not invalidated or rendered void for the want of such an inventory. Whatever estate belongs to the debtor, at the time of a general assignment, passes, by force of the statute, to the assignee. The transaction contemplated in the Iowa statute, and termed a general assignment, "is a disposition of *all* the property of the insolvent for the benefit of all his creditors." *Van Patten* v. *Burr*, 52 Iowa, 518, 521. But the assignment in question here was not a general assignment. It was only a partial one. The debtor assigned, and from the terms employed by him could have intended to assign, only the property particularly enumerated and described in the schedule annexed to the instrument that passed the title. The plaintiff concedes that partial assignments are permissible under the statutes of Iowa. *Lampson* v. *Arnold*, 19 Iowa, 479, 486. The statutory provisions just referred to have reference only to general assignments.

For the reasons given we are of opinion that the court did not err in holding that the goods attached did not pass to Bock by the assignment in question, and were subject to the writs that came to the hands of the defendants. And the jury were properly instructed to find for the defendants.

This disposes of the case without the necessity of considering whether the assignment, if regarded as a general assignment of the debtor's property, was or was not void under the statutes of Iowa.

*Judgment affirmed.*