2000 SD 20

**AFSCME—LOCAL 1025 SIOUX FALLS SCHOOL MAINTENANCE AND CUSTODIAL WORKERS, Grievants and Appellants,**

v.

**SIOUX FALLS SCHOOL DISTRICT 49–5, Appellee.**

**No. 20922.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Feb. 9, 2000.

William A. Delaney, III, Sioux Falls, for grievants and appellants.

Lori Purcell Fossen of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee.

KONENKAMP, Justice

[¶ 1.] This appeal arises from a decision by Sioux Falls School District 49–5 to close all its facilities in response to a severe winter storm. Custodial workers, who by contract were required to work in inclement weather, were ordered not to come in. Some custodians received notice and stayed home; others received no notice, came to work, and then left; still others remained on duty. The Union brought a grievance claiming the District violated the contract by calling off work. Following a hearing, the Department of Labor found for the Union. On appeal, the circuit court reversed, holding there was no breach of contract, and if there was, the weather conditions excused the breach. We reverse in part because the contract expressly provided that the custodial workers would report for work in inclement weather, but we affirm the court's ruling on damages.

## Facts

[¶ 2.] On January 9 and 10, 1997, a severe winter storm hit eastern South Dakota. Interstate highways and many local roads were closed, as snowplows were unable to keep them cleared. Wind chills reached dangerous levels. Sioux Falls School District officials canceled all classes. The storm was severe enough that the District also decided, for the safety of its employees, to cancel work for all personnel, including the custodial and maintenance workers. To notify the workers, the supervisors were called and they in turn implemented a "calling tree" to inform the rest. At the School District's request, local television and radio stations announced the same message. Notification was not entirely successful: 86 of the 178 custodians reported to work. Management sent some of these workers home when they arrived. Others worked their entire shift.

[¶ 3.] Under the District's employment contract with AFSCME–Local 1025 Sioux Falls School Maintenance and Custodial Workers Union, during inclement weather conditions, custodial and maintenance employees are required to report to work, even when schools and offices are closed. The contract provides that they will be paid time-and-a-half overtime on these days. On January 13, 1997, the Monday following the snow day, the Director of Operational Services for the District, Jeff Kreiter, advised the custodial staff by memo that those who had reported to work on January 10 would be paid at the overtime rate until the time they were told to leave. Any time worked after receiving notice would be compensated at straight time. Employees who did not work a full shift were given the option of taking personal or vacation leave, making up the time, or receiving no pay.

[¶ 4.] Richard LaPlante, the president of the local Union, met informally with Kreiter to resolve what the Union perceived as a violation of its employment agreement. No satisfactory arrangement was reached and the matter proceeded to a formal Level I grievance. In denying the grievance, Kreiter explained that the contract had no protocol for closing all school components, as had happened on January 10, and that his memo of January 13 created procedures to address such occasions.

[¶ 5.] The Union then filed a Level II grievance before Dr. Keegan, the District Superintendent. Dr. Keegan's response, dated February 21, 1997, allowed the custodians who had worked on January 10, as well as those who elected to make up their time, to be paid at overtime rate. Individuals who had previously elected to take leave time could change their election, and those who had not yet made an election were allowed to do so. Dissatisfied with this response, the Union then proceeded with a Level III grievance before the Sioux Falls School Board, which essentially upheld Keegan's decision, but conceded that the inclement weather provision in the contract "is clear and unequivocal and it is understandable why the custodians reported to work or remained there." The Union then filed a Petition for Review before the Department of Labor, where an Administrative Law Judge ruled that the District had violated its agreement with the Union, and ordered payment of additional wages.

■ [¶ 6.] The District appealed the Department's decision to the circuit court. The court reversed and entered an order in favor of the District. The Union now appeals to this Court asserting four separate issues, which we, for simplicity, merge into three: (1) Did the District violate the union contract when the custodial workers were instructed not to report to work? (2) Was the snowstorm an "irresistible superhuman cause" under SDCL 20–6–2, excusing the District's contractual obligations? (3) What was the proper measure of damages? As this is an administrative appeal, our review is governed by SDCL 1–26–36. Contract interpretation is a question of law, reviewable under the de novo standard. *Olson v. United States Fidelity and Guar. Co.*, 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200.

### Analysis and Decision

#### 1. Breach of Union Contract

[¶ 7.] Three provisions in the employment agreement are relevant to this appeal: Articles 4, 8, and 12.

ARTICLE 4. MANAGEMENT RIGHTS

4.01 Statement

Nothing in this Agreement shall diminish any power, right or prerogative possessed by the Board or its administrative staff except where the District's power, right or prerogative is legally and specifically limited by this Agreement.

4.02 Specific Management Prerogatives

The management rights of the District include but are not limited to the following:

4.02.01 To utilize personnel, methods, and means in the most appropriate and efficient manner possible.

ARTICLE 8. OTHER CONDITIONS OF EMPLOYMENT

8.02 Inclement Weather Procedures

8.02.02 Schools Closed–Offices Closed

8.02.02.01 Custodial and maintenance department employees are required to work. Those employees shall be paid for the day as if overtime.

8.02.02.02 All other employees shall not report to work and shall not be paid unless vacation is used, or time is made up.

ARTICLE 12. REDUCTION

12.01 The District reserves the right to reduce the number of District employees, the number of hours worked by District employees and each employee's work schedule.

■ [¶ 8.] Conventional principles of contract interpretation require agreements to be construed in their entirety giving contextual meaning to each term. When provisions conflict, however, and full weight cannot be given to each, "the more

specific clauses are deemed to reflect the parties' intentions—a specific provision controls a general one." *State v. Greger*, 1997 SD 14, ¶ 21, 559 N.W.2d 854, 864 (citing *Bock v. Perkins*, 139 U.S. 628, 634, 11 S.Ct. 677, 679, 35 L.Ed. 314, 316 (1891)). The District argues that the three articles, when read together, allow it the prerogative, when schools and offices are closed for inclement weather, either to require custodians to work or to require them *not* to work. As the weather was severe on January 10, the District asserts that conditions were extraordinary, a situation not anticipated in the contract's inclement weather procedure. Given this, the District believes it "came up with a solution it felt fair and equitable to all concerned." The Union, on the other hand, argues that the contract explicitly requires custodians to work on bad weather days. In the Union's view, if Articles 4 and 12 override the specific language of the inclement weather provision, then the District can disregard specific language in the contract anytime, making the agreement on conditions of employment nearly worthless.

[¶ 9.] In its findings, the trial court stated that Section 8.02 (Inclement Weather Procedures) fails to address situations in which the weather was "as severe as it was on January 10, 1997." This finding sustained the District's position that the weather was "above and beyond the definition of inclement weather." Section 8.02 defines the responsibilities for both sides when schools and offices are closed be-

cause of inclement weather. It contains no ambiguity allowing it to be understood in some other way. *See Pam Oil, Inc. v. Travex Intern. Corp.*, 336 N.W.2d 672, 674 (S.D.1983). The provision plainly states that the custodians are required to work, and the District is required to pay them overtime. Nothing in the contract suggests that a workday for custodians can be canceled without pay if inclement weather is *too* inclement.*

[¶ 10.] Despite the clarity of Section 8.02, the District contends that Sections 4.01, 4.02.01, and 12.01 give it the privilege to use its personnel in the most efficient manner, allowing a reduction of employee hours. Articles 4 and 12 are general provisions. Neither one moderates Section 8.02, a specific provision governing working conditions in inclement weather. Section 4.01 states that management's "power, right or prerogative" remains undiminished unless it is "specifically limited by [the] Agreement." Section 8.02 explicitly limits that prerogative. Article 12 contemplates a general reduction in workforce or hours, not makeshift adjustments based on weather. We conclude that the court erred in its reading of the contract. The specific provisions of Section 8.02.02 control.

## 2. "Irresistible Superhuman Cause" As Excuse of Performance

[¶ 11.] The Union next appeals the trial court's finding that even if the District violated the contract, SDCL 20–6–

* What the dissent fails to acknowledge is that this was a "negotiated" agreement, with hours and working conditions hammered out beforehand between the School District and the Union. Notwithstanding the dissent's concern about safety, of course the District could tell its custodians not to report for work on a day they were required, and yes, entitled, to work. The consequence, however, would be that the District would have to allow a make up day as it did here. It could not simply cancel a workday and make the custodians bear the cost of that decision. The flaw in the dissent's reasoning becomes most apparent in its rhetorical question: "One must ponder, if there is truly a right to work in inclement weather, as the majority holds, then should not these same employees be subjected to disciplinary proceedings for absenteeism?" We need not ponder this question as the Administrative Law Judge already answered it in his findings: "Any custodian who does not report to work as required by Section 8.02.02.01 is subject to discipline by the District." Finding of Fact # 5.

2 excused the violation. This statute provides:

> Want of performance, or of an offer of performance, or any delay therein, is excused when it is prevented or delayed by an irresistible superhuman cause, or by the act of public enemies of this state, or of the United States, unless the parties have expressly agreed to the contrary.

The term "irresistible superhuman cause" is not defined statutorily, but a definition is unnecessary here. Even if conditions on January 10 fit within this term, the contract declares an express agreement to the contrary. As the statute explains, failure to perform because of an "irresistible superhuman cause" is not excused when the parties have agreed otherwise. We defer to plain language. *Truck Ins. Exchange v. Kubal,* 1997 SD 37, ¶ 15, 561 N.W.2d 674, 677. Section 8.02.02 unequivocally provides that during inclement weather, custodial and maintenance workers "are required to work."

[¶ 12.] The term "inclement weather" covers anything from conditions merely inconvenient to circumstances threatening life and property. To read the term as covering only lesser forms of bad weather is to insert language the parties themselves left out. Perhaps a clause covering extraordinary weather conditions should have been in the contract, but it cannot be inserted after the fact. If an event is foreseeable, a party making an unqualified promise to perform upon the occurrence of the event is obligated to perform, even when performance becomes unfeasible because of that event. E. Allan Farnsworth, Contracts § 9.6, at 716 (2d ed 1990). Severe winter weather is more than foreseeable in eastern South Dakota—it is inevitable. Section 8.02 fixes the obligations of the parties when that inevitability arrives. The District cannot use inclement weather to excuse its contractual duty.

### 3. Damages for Breach of Contract

[¶ 13.] The District breached the terms of the contract when it ordered a work stoppage for custodial and maintenance workers on January 10. Responsibility to remedy the broken agreement, therefore, falls on the District. The workers must be given the benefit of their bargain. That is, they must be put back in the position they would have been in but for the breach. SDCL 21–2–1 details the general damages recoverable for breach of contract. It provides in part:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

[¶ 14.] Section 8.02 grants custodial employees overtime compensation for work performed on days that schools and offices are closed for inclement weather. Because of the diversity of worker response to the District's actions, there are different categories for compensation. This diversity makes it more complex to formulate the damages due each worker. However, breaching parties may not complain when the task is made difficult by their own acts. *Mash v. Cutler,* 488 N.W.2d 642, 649 (S.D.1992). "[T]here need only be a reasonable basis for measuring the loss and it is only necessary that damages can be measured with reasonable certainty." *Tri–State Ref. & Inv. Co. v. Apaloosa Co.,* 452 N.W.2d 104, 110 (S.D. 1990) (quoting *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114, 118 (S.D.1977)) (other citations omitted). Any doubt persisting on the certainty of damages should be resolved against the contract breaker. *Id.* at 110 (citations omitted).

[¶ 15.] The Administrative Law Judge (ALJ) found four classes of claimants and ordered separate amends for each:

a) Employees who worked their full shift on January 10 were entitled to overtime for that day but no further compensation.

b) Employees who worked none or only part of their shift on January 10 and made up remaining time on another day were awarded overtime compensation for all their scheduled hours on January 10, as well as for any make up hours they worked on another day.

c) Employees who did not work on January 10 and who took leave or vacation time to make up the time were awarded overtime compensation for all their scheduled hours on January 10, and the vacation or leave time was ordered to be refunded.

d) Employees who did not work on January 10 and who chose not to take leave or vacation time or to make up the time were awarded overtime compensation for their scheduled hours on January 10.

[¶ 16.] The trial court reversed those parts of (b), (c), and (d) that required compensation for "scheduled" hours not actually worked or made up. Those who did not "make up" the hours were not entitled to overtime pay: to find otherwise, the court said, would mean they would be receiving "a day-and-one-half's pay for no work."

[¶ 17.] To evaluate whether the court's decision is a fair resolution, we test the principle of mutuality in this bilateral contract by considering the possible inverse of what happened on January 10. The bargained for exchange was a day's work for a day's pay; or, more precisely, a snow day's work for a day's overtime pay. Suppose a custodial employee fails to appear for a scheduled shift during a snowstorm because of travel impediments and concerns for personal safety. If we concede the validity of this excuse, the same one the

District gave, the employee still cannot claim a flat entitlement to pay for the missed day. In fairness, the District might rightfully demand a make up day of work for a day's compensation. In that way the District receives the benefit of its employment agreement: a day's work for a day's pay. Absent a contractual provision to the contrary, the District cannot demand a make up day of work with no pay, for then it would be receiving more than its bargained for recompense.

[¶ 18.] Conversely then, an employee denied the opportunity to work a day pursuant to the contract is rightfully entitled to make up the missed day for the same compensation. This was where the ALJ erred and where the circuit court properly reversed. To compensate custodians who did not work on January 10, and who refused to make up the day by using leave time or working an additional day, the ALJ ordered the District to pay them as if they had worked a full day, reasoning that if they had worked as they were entitled to, they would have received the overtime pay. This allows workers to receive a day's overtime pay for no day's work. As the District cannot insist on a day's work for no pay, so the custodians cannot insist on a day's pay for no work. "[N]o person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof *on both sides*. . . ." SDCL 21–1–5 (emphasis added).

[¶ 19.] In reaching a different conclusion, the ALJ applied SDCL 20–6–5: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits, which he would have obtained, if it had been performed by both parties." This provision assumes one side's total prevention of performance. That did not happen. The District offered a make up day for equivalent pay. A delay in performance will not ordinarily relieve the nonbreaching party from per-

forming altogether. *See generally*, Farnsworth, *supra*, § 8.15 (responses to breach by nonperformance).

[¶ 20.] Custodians who did not work on January 10 and who did not provide any make up time should receive no compensation. One might argue that such an arrangement allows the District to postpone at will a compulsory workday afforded under the contract. Yet when a contract is breached, compensation is the only measure of damages. The ALJ's solution was punitive rather than compensatory. If those who were denied work on January 10 made up the missed time, they are entitled to overtime pay. That is all their contract allows. It follows then that those categories of workers who did not work or who only worked part of their shifts on January 10, and who made up the missed time with additional work or leave time, are entitled to overtime for the hours worked on January 10 and for the made up time, but no more.

[¶ 21.] Reversed in part and affirmed in part.

[¶ 22.] SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 23.] MILLER, Chief Justice, concurs in part and dissents in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 24.] Although I generally agree with the majority's holding on Issue 3, for reasons stated below, I dissent on Issue 1 and would not reach Issue 2.

[¶ 25.] The majority opinion gives a strained interpretation of certain specific provisions of the contract, without regard to the plain language and obvious meaning and intent of the contracting parties. "There is no surer way to misread any document than to read it literally." *Guiseppi v. Walling*, 144 F.2d 608, 624 (2dCir.1944) (L.Hand, J., concurring).

[¶ 26.] Look at the clear provisions of the written contract. It is obvious that Article 8 does not create a *right* or entitlement to work in inclement weather. Rather it is a *condition* of employment—a limit upon the plenary powers of the District as enumerated in Article 4.

[¶ 27.] Article 4 is entitled "MANAGEMENT RIGHTS." Section 4.02 is styled "Specific Management Prerogatives" and gives the District the *right* "[t]o utilize personnel, methods, and means in the most appropriate and efficient manner possible." Section 4.02.01.

[¶ 28.] On the other hand, Article 8 is entitled "OTHER CONDITIONS OF EMPLOYMENT." It creates no specific *rights*, as the majority tries to read into it. Section 8.02.02.01 does provide that "[c]ustodial and maintenance department employees are required to work" in inclement weather. But nowhere does the contract state, or even fairly imply, that those employees have a *right* to work in inclement weather. I challenge the majority to tell us what language in the contract gives the employees a right to work in inclement weather.

[¶ 29.] The Management Rights conferred in Article 4 must take precedence over the lesser Conditions of Employment created in Article 8. Section 4.01 recognizes the plenary management power of the District in setting conditions of employment. The remainder of the contract must be read cognizant of such general authority. Nothing in the contract diminishes the power of the District, except where specifically limited by the contract. Section 4.02.01 plainly states the District has the *right* to utilize personnel in the most *appropriate* manner possible. Under that provision, the District has the right to utilize its personnel so as not to jeopardize worker safety.

[¶ 30.] To give the contract the literal interpretation of the majority strains com-

mon sense. Surely the contract cannot contemplate that even when weather conditions become so severe that the Governor and Mayor are closing roads, custodial and maintenance workers nevertheless have the *right* to go to work, despite the contrary instructions by the District! The contract certainly does not say this, and common sense tells us this is not what the parties intended.

[¶ 31.] In Issue 3 the opinion asserts that the agreed-upon bargain is a day's work for a day's pay. I argue that this bargain is a *condition* of employment, not an *entitlement* to employment. The majority opinion states that "[a]s the District could not insist on a day's work for no pay, so an employee cannot insist on a day's pay for no work." (I agree!) It then concludes that those employees who did not come to work and did not make up the time or use accrued leave are not entitled to pay. (Again, I agree!) Interestingly, the majority's rationale on Issue 3 recognizes the validity of my position, but at the same time it fails to appreciate the lack of its logic to its holding on Issue 1.

[¶ 32.] One must ponder, if there is truly a *right* to work in inclement weather, as the majority holds, then should not these same employees be subjected to disciplinary proceedings for absenteeism? In other words, there are corresponding responsibilities that accompany rights. Thus, if there is indeed a *right* to work in inclement weather, then there is a corresponding responsibility to be present for work. By following the rationale of the majority to its logical conclusion, the District would have a corresponding *right* to require them all to come to work, regardless of how serious the safety risks, or otherwise face disciplinary proceedings. This would be an absurd conclusion. It is equally absurd to hold that the District is prevented by the contract from notifying its employees that because of certain inclement conditions they should stay at home. Only

by a stretch of the imagination would the employees have asked for—and the District have granted—such an absolute right to work.

[¶ 33.] In sum, the contract must be read with the understanding that the District has general, plenary authority over its employees, subject only to the conditions set forth in the contract. If the District deems the weather so adverse that it is not safe (or legal) for anybody to travel to work, that decision is within its power under Article 4. The trial court was correct; the majority opinion is not.