2000 SD 160

**Rodney W. McKIE, Plaintiff and Appellee,**

v.

**Ron HUNTLEY, d/b/a Huntley Construction "Concrete", Defendant and Appellant.**

No. 21218.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Dec. 27, 2000.

Penny Tibke Platnick, of Morrill, Thomas, Nooney & Braun, Rapid City, South Dakota, for plaintiff and appellee.

Brad A. Schreiber, of Quinn, Day & Barker, Belle Fourche, South Dakota, for defendant and appellant.

KONENKAMP, J.

[¶ 1.] In this contract dispute, we review both the circuit court's order disallowing punitive damages and its summary judgment against the concrete subcontractor on the ground that his damage calculation was too speculative. We affirm in part, reverse in part, and remand.

**A.**

[¶ 2.] This is a suit for breach of a construction contract between Rodney W. McKie and Ron Huntley, d/b/a Huntley Construction "Concrete." Huntley was awarded the contract on his bid for the concrete work on McKie's home at Johnson Siding, South Dakota. He was to complete the job "as per specifications" for $93,100.50. The contract price was later

amended to $93,600.50. He started work in mid-September 1996.

[¶ 3.] Huntley claims to have encountered many difficulties as he worked on the McKie project. The problems included inadequate access to the site, improper excavation, difficulty in obtaining necessary elevations and dimensions, and numerous changes to the blueprints. These problems resulted in delays and extra costs for which he was not compensated. Huntley received various progress payments totaling $78,300. In August 1997, the general contractor ordered Huntley to cease work and remove his equipment from the job site.

[¶ 4.] Huntley filed a lien against McKie's property for $34,834.73.[1] In response, McKie brought this lawsuit, alleging: (1) Huntley was paid for more work than he completed; (2) McKie had to hire someone else at a higher price to complete the work Huntley performed incorrectly or left undone; and (3) McKie paid $8,054 to one of Huntley's suppliers to obtain release of a lien placed on McKie's property by that supplier. Huntley counterclaimed, asserting breach of contract and breach of the implied covenant of good faith and fair dealing, seeking both compensatory and punitive damages.

[¶ 5.] McKie moved to dismiss Huntley's punitive damage claim, arguing that such damages are not available in a contract action. *See* SDCL 21–3–2. Huntley responded that breach of the covenant of good faith and fair dealing was an independent tort, allowing recovery of punitive damages. In dismissing the punitive damage claim, the circuit court ruled that under current law the claim for breach of the covenant of good faith and fair dealing is not an independent tort.

[¶ 6.] The method Huntley used to calculate his loss was also the subject of pretrial motions. He first proposed to calculate his damages using a cost accounting method, resulting in a claimed loss of $106,000.[2] McKie, by motion in limine, challenged this method, arguing that it was impermissibly speculative. In response, Huntley decided to abandon the cost accounting approach, and the trial court instructed him to break down his claimed damages and tie them to specific instances of breach.

[¶ 7.] In his revised method for calculating damages, Huntley explained that in his bid he initially figured that he would pour 210 cubic yards of concrete at $500 per cubic yard for 183 yards, and $300 per cubic yard for 27 yards.[3] These figures included labor and materials. He then averaged these numbers, arriving at $443 per cubic yard of concrete. Huntley deduced that he was not paid for 122 yards. Thus, by his calculation he was entitled to $54,046 (122 × $443). He also claimed 5% of the total contract price for cold weather costs. Lastly, he subtracted a draw for $6,500 and the $8,054 McKie paid to one of Huntley's suppliers. In sum, Huntley claimed damages of $44,147.

[¶ 8.] McKie again challenged the calculation as speculative and unconnected "to any alleged actual damages suffered ... by virtue of the claims that ... he has put forth." Huntley stood firm, proclaiming that he would offer no other damage methodology. The circuit court ruled Huntley's method inadmissible as it invited "only speculation and conjecture." Without damages, an essential element for recovery, Huntley could not make a case for breach of contract. Accordingly, the court

1. Huntley later released his lien.

2. Cost accounting is a form of analysis that "includes the method of classifying, summarizing, recording, reporting, and allocating the actual costs incurred and comparing them to standard costs established." Black's Law Dictionary 345 (6th ed 1990).

3. In Huntley's brief this calculation is characterized as "based on the number of yards of concrete that were poured." This method was not noted on the face of the bid. Only the flat price of $93,100 was indicated.

granted summary judgment for McKie on Huntley's counterclaim.[4] Huntley appeals.

### B.

[¶ 9.] Huntley contends that the circuit court erred in dismissing his claim for punitive damages. We review this decision as a pure legal question. *See Grynberg v. Citation Oil & Gas Corp.,* 1997 SD 121, ¶ 22, 573 N.W.2d 493, 501 (citations omitted). In South Dakota punitive damages are not recoverable unless expressly allowed by statute. Our law provides:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed ... the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21–3–2. Thus, to obtain punitive damages Huntley must have a case "not arising from contract."

[¶ 10.] Huntley believes that in *Grynberg* we recognized breach of the covenant of good faith and fair dealing, implied in contract, as an independent tort distinct from any underlying contract claim. On the contrary, we have consistently refused to recognize this action as an independent tort. *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 842 (S.D.1990); *see also Nelson v. WEB Water Development Ass'n, Inc.,* 507 N.W.2d 691, 697 (S.D.1993) (citations omitted). In *High Plains Genetics Research, Inc. v. J K Mill–Iron Ranch,* we again ruled that settled law precludes an independent tort action for breach of good faith and fair dealing arising from a contract. 535 N.W.2d 839, 843 (S.D.1995).

[¶ 11.] In *Grynberg* the plaintiff brought claims of fraud and breach of contract, seeking compensatory and punitive damages. *Grynberg,* 1997 SD 121, ¶ 13, 573 N.W.2d at 499. We concluded that puni-

tive damages would be appropriate on a finding that the defendant had engaged in deceit. *Grynberg,* 1997 SD 121, ¶ 26, 573 N.W.2d at 502. Indeed, we recognized that where a duty exists independent from contract, such as the legal obligation to refrain from defrauding others of their property, an independent tort cause of action allowing punitive damages may exist. *Grynberg,* 1997 SD 121, ¶ 22, 573 N.W.2d at 501 (citations omitted). *Grynberg* addressed deceit as an independent tort. It did not recognize the breach of the implied covenant of good faith and fair dealing as an independent tort.

[¶ 12.] This conclusion is clear in light of our later decision in *Diamond Surface, Inc., v. State Cement Plant Comm'n,* 1998 SD 97 ¶ 37, 583 N.W.2d 155, 164. Referring to *Garrett,* we explained that a claim for breach of the covenant of good faith and fair dealing "cannot survive in the absence of contract." *Diamond Surface, Inc.,* 1998 SD 97, ¶ 37, 583 N.W.2d at 164. As such, the good faith doctrine simply allows one party to sue for breach when "the other contracting party, by its lack of good faith, limited or completely prevented the aggrieved party from receiving the ... benefits of the bargain." *Id.* (citations omitted). The circuit court correctly ruled that Huntley asserted no claim to support an award of punitive damages.

### C.

[¶ 13.] Huntley next argues that we should overturn settled law, as compelling reasons exist to recognize the breach of the covenant of good faith and fair dealing as an independent tort. He contends that recognition of this tort would allow greater remedies because contract damages may not make the aggrieved party whole. As a corollary, Huntley believes that a contracting party "should not be allowed to balance the economics of an intentional breach to the financial injury of the other party[.]"

---

4. McKie's claim against Huntley had not been disposed of at the time the parties submitted

their appellate briefs.

[¶ 14.] This reasoning was rejected in *Garrett.* "The contractual and tort remedies which now exist in South Dakota, whether by statute or case law, are adequate to protect a person's right for proven damages." *Garrett,* 459 N.W.2d at 843. There, we emphasized that the measure of damages as set out in SDCL 21–2–1 allows compensation to "the party aggrieved for all the detriment proximately caused … or which, in the ordinary course of things, would be likely to result therefrom." SDCL 21–2–1. Huntley's concern that a "non-breaching party is without a remedy to recover all damages proximately caused by the breaching party's conduct" is unwarranted. *See Garrett,* 459 N.W.2d at 843 (listing existing tort remedies such as fraud, misrepresentation, negligence, breach of duty, intentional infliction of emotional distress, and intentional torts) (internal citations omitted).

[¶ 15.] A central feature in contract law, efficient breach, presupposes that a breaching party will engage in the type of balancing Huntley describes. "[O]ur free market system allows economically efficient breaches … when it costs less for one party to breach an unwise contract and to pay the other party compensatory damages than it would cost to completely perform the contract." *Grynberg,* 1997 SD 121, ¶ 17, 573 N.W.2d at 500. Contrary to Huntley's belief, the efficient breach principle does more than favor financially advantaged individuals; it protects persons from being legally compelled to perform an uneconomical contract. 1 L. Schleuter & K. Redden, Punitive Damages § 7.2 at 389–90 (3d ed. 1995). Huntley presents no compelling reason to overturn our precedent.

### D.

[¶ 16.] The circuit court granted McKie's motion for summary judgment, concluding that Huntley's damage calculations were speculative. In reviewing this decision, we explore whether there was any genuine issue of material fact and if

judgment was renderable as a matter of law. *Nelson,* 507 N.W.2d at 693 (citations omitted). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Campion v. Parkview Apartments,* 1999 SD 10, ¶ 22, 588 N.W.2d 897, 902 (citations omitted).

[¶ 17.] If undisputed facts fail to establish each required element in a cause of action, summary judgment is proper. *Groseth Int'l, Inc. v. Tenneco Inc.,* 410 N.W.2d 159, 169 (S.D.1987). An action for breach of contract requires proof of an enforceable promise, its breach, and damages. *Krzycki v. Genoa Nat'l Bank,* 242 Neb. 819, 496 N.W.2d 916, 923 (1993) (citations omitted). The circuit court ruled that Huntley's loss calculations were so speculative that damages could not be proved with reasonable certainty. And without damages he had no case for breach of contract. In essence, the court ruled that Huntley's theory of recovery was legally defective.

[¶ 18.] To recover damages for breach of contract, the loss must be clearly ascertainable in both its nature and origin. SDCL 21–2–1. Essential to proving contract damages is evidence that damages were in fact caused by the breach. *See Bad Wound v. Lakota Community Homes, Inc.,* 1999 SD 165, ¶ 9, 603 N.W.2d 723, 725 (citations omitted). Proof of damages requires a reasonable relationship between the method used to calculate damages and the amount claimed. *See Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38, 43 (1975). In applying this rule, we refrain from dictating any specific formula for calculating damages. Instead, we apply a "reasonable certainty test concerning the proof needed to establish a right to recover damages." *Drier v. Perfection, Inc.,* 259 N.W.2d 496, 506 (S.D. 1977) (citations and internal quotations omitted). Reasonable certainty requires proof of a rational basis for measuring loss, without allowing a jury to speculate. *Id.* at 506 (quoting *Kressly v. Theberge,* 79

S.D. 386, 112 N.W.2d 232, 233 (1961) (further citations omitted)).

[¶ 19.] Here, for summary judgment purposes the existence of damages is not the question. Both sides claim the other breached the contract and as a result problems and delays occurred with attendant cost overruns. Huntley seeks damages from McKie, and McKie from Huntley. Whether they can satisfy a fact finder that one caused the other's losses remains to be shown. The only issue here is whether Huntley's method of reckoning damages is acceptable.

[¶ 20.] Difficulty in computing damages ought not to be confused with the requirement of proving damages as an essential element for recovery. *Seattle Western Indus., Inc. v. Mowat*, 110 Wash.2d 1, 750 P.2d 245, 249 (1988). Once the existence of damage has been shown by a preponderance of the evidence, a claimant must produce only the best evidence available to allow a jury a reasonable basis for calculating the loss. *Id.* While jurors cannot speculate, they have some leeway in figuring damages. *Id.* (citations omitted). "Any doubt persisting on the certainty of damages should be resolved against the contract breaker." *AFSCME v. Sioux Falls School District*, 2000 SD 20, ¶ 14, 605 N.W.2d 811, 815 (citations omitted). "[B]reaching parties may not complain when the task is made difficult by their own acts." *Id.* (citations omitted). All we require, therefore, is a reasonable basis for measuring the loss.

[¶ 21.] Huntley claimed three types of damages: money due under the original fixed price contract, compensation for additional work beyond the contract, and expenses incurred from the general contractor's interference. In his method of computation, Huntley reckoned his loss using an average cost per yard of concrete figure. He then subtracted his cost as bid under the specifications from his cost using the actual number of yards of concrete expended. He also deducted previous payments. This is similar to what some courts have described as the "total cost method" of measuring damages. *U.S. Industries, Inc. v. Blake Constr. Co., Inc.*, 671 F.2d 539, 547 (D.C.Cir.1982). Properly considered, this approach is not a substitute for proof of causation; it is simply a method for calculating damages. As in every breach of contract case, causation must be established before damages can be recovered. Under the total cost formulation, damages are computed based on the difference between the actual cost incurred in performing the contract and the amount the owner already paid under the contract. *Bagwell Coatings, Inc. v. Middle South Energy, Inc.*, 797 F.2d 1298, 1307 (5th Cir.1986). Some courts and commentators criticize this method because it assumes that the breaching party bears responsibility for any extra costs. *Boyajian v. United States*, 191 Ct.Cl. 233, 423 F.2d 1231, 1240–41 (1970); *see also* William Schwartzkopf et al., Calculating Construction Damages § 1.6 (1997 Supp) (method impermissibly assumes that the contractor "flawlessly performed its work, and that the contractor accurately and precisely estimated the cost of the work to be performed").

[¶ 22.] Once liability is established by a preponderance of the evidence, the total cost method of calculating damages may be appropriate for those disputes where it is difficult or impractical to quantify losses from changed conditions.[5] Sometimes it is impossible to assign a precise monetary loss to each discrete event in a project where continuing problems compound a contractor's performance difficulties. "Although the 'total cost' method

5. *See* Bernhard A. Aaen, THE TOTAL COST METHOD OF CALCULATING DAMAGES IN CONSTRUCTION CASES, 22 PACLJ 1185 (1991): Of course, "[t]he total cost method cannot be used to supplant the contract or convert the contract from a fixed price to a cost plus contract."

must be used with caution, the method should be applied where the nature of the particular loss has made it impossible or highly impracticable to determine damages with a reasonable degree of accuracy and where the loss is substantiated by reliable evidence." *Larry Armbruster & Sons Inc. v. State Pub. School Building Auth.,* 95 Pa.Cmwlth. 310, 505 A.2d 395, 397 (1986) (citations omitted). There are cases where "the total cost method is the best and only means of quantifying the impact of changes on a contractor." *Delco Electronics Corp. v. United States,* 17 Cl.Ct. 302, 327 (1989).

[¶ 23.] Whether the total cost method of computing damages can be used depends on proof of the following elements: (1) the nature of the losses makes it impossible or exceedingly impractical to calculate them with reasonable accuracy; (2) the bid or estimate was realistic; (3) the actual costs were reasonable; and (4) the contractor was not responsible for the added expenses. *Moorhead Constr. Co. Inc., v. City of Grand Forks,* 508 F.2d 1008, 1016 (8th Cir.1975). Many courts have approved a modified total cost approach that allows for the deduction from the total cost problems ascribed to the contractor. *Mowat,* 750 P.2d at 249; *Glasgow, Inc. v. Dept. of Transp.,* 108 Pa. Cmwlth. 48, 529 A.2d 576, 579 (1987); *Bagwell Coatings, Inc.,* 797 F.2d at 1307.

[¶ 24.] Based on the nature of this construction contract dispute, with its many reciprocal allegations of delay and nonperformance, we conclude that the circuit court erred in declaring Huntley's damage calculations unacceptable as a matter of law. The fact finder should decide the damage issue. If the matter is to be heard by a jury, the court can fashion instructions to explain how to evaluate this claim similar to those approved in *Nebraska Public Power District v. Austin Power, Inc.,* 773 F.2d 960, 968 (8th Cir.1985). There, the Eighth Circuit affirmed the submission of damages to the jury on the total cost method, where the trial judge gave jurors a choice between three alternative theories. In that case, the district court instructed the jury that it could use the total cost method if

> a. The nature of the particular losses claimed by Austin Power makes it impossible or highly impracticable to determine them with a reasonable degree of accuracy;
>
> b. The bid or estimate of Austin Power was realistic;
>
> c. The actual cost incurred by Austin Power was reasonable;
>
> d. Austin Power was not responsible for the amount sought to be recovered above the amount previously paid under the contract; and
>
> e. The costs which make up the amount sought to be recovered were proximately caused by [Nebraska Power's] breaches of contract.

*Id.* at 965–66 (alterations in original). Lastly, under the modified total cost approach, the jury was instructed that if Austin proved all the elements except part d, the jury could award damages under the total cost theory, less the amount of loss for which Austin was responsible. *Id.*

[¶ 25.] In summary, we hold that the circuit court correctly dismissed Huntley's tort action for breach of the covenant of good faith and fair dealing. However, the court erred in disallowing Huntley's damage claim as matter of law.

[¶ 26.] Affirmed in part, reversed in part, and remanded.

[¶ 27.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.